Bradley BOSTON

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security

No. CIV. SKG–03–2800.

United States District Court,
D. Maryland.

Aug. 12, 2004.

Paul Rodney Schlitz, Jr., Jenkins Block and Associates PC, Baltimore, MD, for Plaintiff.

Kristine L. Sendek Smith, Neil R. White, Office of the United States Attorney, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION

GAUVEY, United States Magistrate Judge.

Presently pending before this Court, by the parties' consent, are cross-motions for summary judgment concerning the Commissioner's decision denying Mr. Boston's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"). (Paper Nos. 13, 16). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir.1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir.1987). A hearing is unnecessary. Local Rule 105.6. For the reasons that follow, this Court **DENIES** the plaintiff's motion for summary judgment and **DENIES** the Commissioner's motion, but **GRANTS** the plaintiff's motion to remand the case to the Commissioner for further proceedings consistent with this opinion.

Mr. Boston ("plaintiff") originally filed an application for DIB and SSI on September 18, 2001, alleging disability since November 15, 2000, the date he last worked. (R. 80).[1] A hearing was held on May 12,

---

1. There is a discrepancy in the record as to the date the plaintiff initially filed for benefits.

2003, whereafter the Administrative Law Judge ("ALJ") denied Mr. Boston's claim on June 27, 2003. (R. 13–24). The ALJ concluded that Mr. Boston's only severe impairment was coronary artery disease. (R. 15). Additionally the ALJ found the plaintiff retained the residual functional capacity ("RFC") "to perform sedentary exertion." (R. 21). Based on Mr. Boston's RFC, the ALJ determined that he was not able to return to his past relevant work, but had transferable skills including: knowledge of computer systems hardware and software, supervision, hiring and firing employees, evaluating employees, production work and record keeping; and that jobs as an information clerk and order clerk existed in the national economy for an individual of the plaintiff's age, education, past relevant work experience, and residual functional capacity. (R. 21–22). On August 1, 2003, the Appeals Council denied Mr. Boston's request for review, thus making this case ripe for judicial review. (R. 4–6).

The Commissioner's decision must be upheld if supported by substantial evidence which is more than a scintilla, but less than a preponderance, and sufficient to support a conclusion in a reasonable mind. *See* 42 U.S.C. § 405(g) (1998); *see also King v. Califano,* 599 F.2d 597 (4th Cir.1979); *Teague v. Califano,* 560 F.2d 615 (4th Cir.1977); *Laws v. Celebrezze,* 368 F.2d 640 (4th Cir.1966). This Court may not weigh conflicting evidence, determine credibility, or substitute its judgment for the Commissioner's. *See Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir.1990). Although deferential, this standard of review does not require acceptance of a determination by the Commissioner which applies an improper standard, or misapplies the law. *See Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir.1987). Following its review, this Court may affirm, modify, or reverse the Commissioner, with or without a remand. *See* 42 U.S.C. § 405(g) (1998); *Melkonyan v. Sullivan,* 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).

## I. Factual Background

The plaintiff was born November 12, 1954. (R. 36). He completed high school and two years of college. (R. 90). From around 1979 until the onset of his alleged disability on November 15, 2000, the plaintiff was employed in multiple positions as a sweeper, computer technician and salesman, and a factory worker. (R. 85). The plaintiff lives with his brother. (R. 119).

Since 1998, the plaintiff has been diagnosed with an aborted acute myocardial infarction,[2] arteriosclerotic cardiovascular disease,[3] cholinesterae,[4] hypercholestremia,[5] hypertension,[6] renal insufficiency,[7]

While the ALJ and both parties' attorneys adopted September 10, 2001 as the date the application was filed, the application itself is dated September 18, 2001. (R. 13, Paper No. 13 at 2, Paper No. 16 at 1).

2. Gross result of morphological changes indicative in cell death in the heart as a result of interruption of the blood supply to that area. Dorland's Illustrated Medical Dictionary 928 (30th Edition 2000).

3. Disease characterized by the thickening and loss of elasticity of the arterial walls of the heart. Dorland's Illustrated Medical Dictionary 143 (30th Edition 2000).

4. Stoppage or suppression of the flow of bile. Dorland's Illustrated Medical Dictionary 354 (30th Edition 2000).

5. Excessive cholesterol in the blood. Dorland's Illustrated Medical Dictionary 880 (30th Edition 2000).

6. High blood pressure. Dorland's Illustrated Medical Dictionary 889 (30th Edition 2000).

7. Insufficient kidney function. Dorland's Illustrated Medical Dictionary 1611 (30th Edition 2000).

non-insulin dependant diabetes mellitus,[8] sleep apnea,[9] and obesity.[10] (R. 141, 170, 186). The plaintiff has been treated with a wide range of medications, including drugs to treat his high cholesterol, chest pain, and hypertension (R. 137, 180).[11]

Medical records covering June 16, 1999 to April 8, 2002 were submitted by M. Vasantha–Kumar, M.D., a general practitioner at the Catonsville Health Care Center ("the Center"). (R. 171–179). Records from each of the plaintiff's visits to the center note his high blood pressure. (R. 171–179). The plaintiff's obesity was also frequently noted, with his weight ranging from 296 pounds to 316 pounds. (R. 171–179, 171, 174). The plaintiff reported chest pain on his October 1, 2001, January 31, 2002, and February 28, 2002 visits to the center. (R. 173, 175, 176). These records also note that the plaintiff was a smoker. (R. 173).

On May 25, 2000, the plaintiff was evaluated by cardiologist Ashok Chopra, M.D. (R. 152). The plaintiff noted that he had episodes of chest discomfort in 1997 and 1998, and in the six months preceding his visit to Dr. Chopra. (R. 152). The plaintiff also stated that he only experienced the pain when he exerted himself. (R. 152). Following this visit, On May 31, 2000, the plaintiff underwent an echocardiogram which indicated borderline systolic function. (R. 153).

On June 22, 2000, the plaintiff returned to Dr. Chopra for a follow-up appointment for hypertensive heart disease with congestive heart failure. (R. 154). Dr. Cho-

pra indicated that the plaintiff showed no signs of acute distress, but did note edema in both legs below the knee. (R. 154). Dr. Chopra adjusted the plaintiff's medication slightly to help the edema. (R. 154).

On October 19, 2000, the plaintiff returned to Dr. Chopra for another follow-up appointment. (R. 155). The plaintiff indicated that he was feeling better since his last visit and continued to walk regularly. (R. 155). While Dr. Chopra noted that the plaintiff was under no acute distress, he indicated that the plaintiff had edema below the knee in both legs. (R. 155). Dr. Chopra adjusted the plaintiff's medication because his blood pressure was not "adequately controlled." (R. 155). Dr. Chopra also stressed the importance of weight reduction to the plaintiff. (R. 155).

On October 25, 2001, the plaintiff had a third follow-up appointment with Dr. Chopra. (R. 156). The plaintiff reported he had been doing fairly well, but had consistent episodes of chest discomfort with exertion. (R. 156). Dr. Chopra noted the plaintiff appeared comfortable at rest, but had a systolic ejection murmur and edema in both feet. (R. 156). Dr. Chopra indicated that the plaintiff's blood pressure was much better controlled. (R. 156).

On October 10, 2001, the plaintiff completed an adult disability report. (R. 83–91). The plaintiff reported that congestive heart failure limited his ability to work by causing chest pain and weakness in his arms and legs. (R. 84). The plaintiff noted that his condition first bothered him

---

8. Type 2 diabetes. A chronic syndrome of impaired carbohydrate, protein, and fat metabolism owing to insufficient secretion of insulin or to target tissue insulin resistance. Dorland's Illustrated Medical Dictionary 506 (30th Edition (2000)).

9. Transient periods of cessation of breathing during sleep. Dorland's Illustrated Medical Dictionary 116 (30th Edition (2000)).

10. An increase in body weight beyond the limitation of skeletal and physical requirement. Dorland's Illustrated Medical Dictionary 1297 30th Edition (2000).

11. The plaintiff has been treated with, among other medications, Atenolol, Avapro, Clonidine, Diovan, Furosemide, Glucophage, Lipitor, Nifedipine, Nitroglycerin, Plavix, and Toprol.

on January 19, 1996, and that he became unable to work because of his condition on November 15, 2000, when he was laid off. (R. 84).

On November 7, 2001, Dr. Vasantha–Kumar completed a Medical Report Form. (R. 141–144). Dr. Vasantha–Kumar indicated that the plaintiff was being treated with medications and that his medical condition was stable, but noted that he had been hospitalized twice in the previous two years for cardiac decompensation. (R. 141, 143). Dr. Vasantha–Kumar opined that the plaintiff could sit for four hours per day, stand for two hours per day, walk a half a block, lift fifty pounds, lift/carry twenty-five pounds occasionally, and lift/carry ten pounds frequently. (R. 142). Additionally, Dr. Vasantha–Kumar found that the plaintiff could not climb steps or a ladder, but had no limitations on his ability to bend, squat, reach, or crawl. (R. 142). The doctor also noted that the plaintiff can never be exposed to dust, fumes, or odors. (R. 142). Dr. Vasantha–Kumar did not indicate any limitations which would restrict the activities of daily living, or cause difficulties maintaining social functioning, concentration, persistence, or pace. (R. 143). Dr. Vasantha–Kumar ultimately concluded that the plaintiff's medical condition would prevent him from working until December 31, 2002. (R. 143).

On January 7, 2002, the plaintiff completed a daily activities questionnaire. (R.115–120). The plaintiff listed his daily activities as preparing meals, reading, watching television, playing video games, using the internet, and sometimes doing laundry, paying bills, going to the grocery store or doing dishes. (R. 115). The plaintiff noted that his routine has changed since the onset of his condition because he cannot go up and down stairs much, cannot walk more than seventy-five yards at once, cannot lift over ten pounds and gets chest pains if he moves too fast. (R. 115).

Since the onset of his condition, the plaintiff has had to stop swimming, hiking, fishing, and rock climbing. (R. 118). The plaintiff talks on the phone everyday, but no longer goes to a bar daily to socialize because he no longer drinks. (R. 119). Finally, the plaintiff noted that he was put on light work because of his condition and was subsequently laid off. (R. 120).

On January 9, 2002, James Biddison, M.D., of the Maryland Disability Determination Service ("DDS"), completed a Physical Residual Functional Capacity Assessment for the plaintiff based on a review of his medical records. (R. 158–165). Dr. Biddison opined that the plaintiff could lift twenty pounds occasionally, lift ten pounds regularly, stand and/or walk at least two hours in an eight hour day, and sit about six hours in an eight hour day. (R. 159). Dr. Biddison indicated that his conclusions are supported by the plaintiff's obesity, hypertension and congestive heart failure. (R. 160). Additionally, Dr. Biddison found that the plaintiff could only climb occasionally, but had no manipulative, visual, communicative, or environmental limitations (R. 160–162).

On February 28, 2002, Dr. Vasantha–Kumar completed a second Medical Report Form. (R. 167–170). Dr. Vasantha–Kumar listed the plaintiff's medications and indicated that his condition was stable. (R. 167–168). Dr. Vasantha–Kumar opined that the plaintiff could sit for eight hours per day, stand for three hours per day, walk a block, and lift/carry ten pounds. (R. 168). Additionally, Dr. Vasantha–Kumar found that the plaintiff could not climb steps or a ladder, but had no limitations on his ability to bend, squat, reach, or crawl. (R. 168). The doctor also noted that the plaintiff can never be exposed to extreme heat, dust, and height. (R. 168). Dr. Vasantha–Kumar concluded that the plaintiff's medical condition would prevent him

from working until December 31, 2002. (R. 169).

On March 7, 2002, the plaintiff suffered a heart attack and was admitted to St. Agnes Hospital, where he remained until March 9, 2002. (R. 180). Upon visiting the plaintiff in the hospital, Dr. Chopra noted that he was considerably overweight and had traces of edema in both feet, but was alert, cooperative, and in no acute distress while at rest in bed with supplemental oxygen. (R. 183). On March 9, 2002, the plaintiff had another echocardiogram, which showed reduced global systolic function, and an ejection fraction of thirty-five percent. (R. 213).

The plaintiff returned to the Center in March and April of 2002, after being hospitalized for his heart attack. (R. 178–179). On March 14, 2002, the plaintiff indicated that he was "feeling well," but had not yet been able to fill his prescription for Avapro. (R. 178). Dr. Vasantha–Kumar noted that the plaintiff was not in any distress. (R. 178). The plaintiff also reported that he was trying to follow a low fat diet more aggressively. (R. 178). On April 8, 2002, the plaintiff returned to the clinic, again reporting that he was "doing well," although he was feeling "bored." (R. 179). Dr. Vasantha–Kumar noted the plaintiff was alert and in no distress. (R. 179). By April 8, the plaintiff was on all of his medication and adhering to his diet more closely. (R. 179).

On March 19, 2002 and April 15, 2002, the patient had appointments with Dr. Chopra. (R. 149–151). On March 19, Dr. Chopra noted that the plaintiff appeared cheerful and well, and had denied any incidents of chest pain. (R. 149). Additionally, Dr. Chopra indicated that the plaintiff's blood pressure was not adequately under control, but that he would continue to monitor it before changing the plaintiff's medication. (R. 150). On April 15, Dr. Chopra noted that the plaintiff was progressing well and appeared comfortable. (R. 151). At both visits, Dr. Chopra discussed the importance of risk factor modification and losing weight with the plaintiff. (R. 149, 151).

On March 15, 2002, the plaintiff submitted a request for reconsideration to the Social Security Administration. (R. 74). The plaintiff stated he disagreed with the Administration's initial denial of disability benefits because he could not work and had suffered many heart attacks including one on March 7, 2002. (R. 74).

On August 19, 2002, Reza Sajadi, M.D., of the Maryland Disability Determination Service, completed a cardiac evaluation of the plaintiff. (R. 222–224). Dr. Sajadi noted the plaintiff's history of chest pain and shortness of breath after walking two blocks, as well as his history of hypertension, diabetes, chest pain and congestive heart failure. (R. 223–224). On exam, Dr. Sajadi found the plaintiff was not in acute distress, but noted diminished heart sounds and obesity. (R. 223). Dr. Sajadi concluded, "[t]he patient is unable to perform any gainful employment due to his problem." (R. 223).

On October 3, 2002, a Physical Residual Functional Capacity Assessment was completed by a member of the Maryland Disability Determination Service. (R. 236–243). The Assessment indicated the plaintiff could occasionally lift twenty pounds, frequently lift 10 pounds, stand and/or walk at least two hours in an eight hour day, and sit about six hours in an eight hour day. (R. 237). It also noted the plaintiff could only occasionally climb, balance, stoop, kneel, crouch, or crawl. (R. 238).

On February 3, 2003, the plaintiff submitted a request for a hearing by an ALJ. (R. 79). The plaintiff indicated his congestive heart failure, diabetes, reflux, vision problems, and swelling in his feet and an-

kles prevented him from engaging in gainful employment. (R. 79).

Between March 18, 2003 and March 20, 2003, the plaintiff was hospitalized again for chest pain. (R. 265–266). The plaintiff stabilized rapidly, and upon discharge was alert, cooperative, cheerful, and walking through the halls without pain. (R. 265–266). His discharge diagnoses included unstable angina secondary to coronary artery disease and coronary artery disease status post anterior myocardial infarction in March 2002. (R. 265).

At the administrative hearing on May 12, 2003 the plaintiff testified as to his condition. (R. 36–59). He stated that he had diabetes, hypertension, sleep apnea, and heart problems which caused him numbness, pain in his chest, and shortness or breath. (R. 45–47). The plaintiff indicated that he took medication to control his diabetes and blood pressure, and that his medication controlled some, but not all, of his blood pressure problem. (R. 45–46). The plaintiff also testified that his sleep apnea is controlled through the use of a C–PAP machine.[12] (R. 46).

## II. Analysis

The plaintiff makes two arguments in support of his position that the Commissioner's final decision is not supported by substantial evidence: (1) the ALJ failed to consider all of the plaintiff's severe impairments and therefore failed to consider his impairments synergistically; and (2) the ALJ's decision that the plaintiff can perform a range of sedentary work has no informed medical basis. (Paper No. 13 at 3–5). The Court finds merit in both of these arguments.

### A. The ALJ Failed to Consider Plaintiff's Obesity as a Severe Impairment, in Combination with the Plaintiff's Other Impairments, and in Determining Plaintiff's RFC at Step 4.

■ At step two, the ALJ found that the plaintiff's coronary artery disease was severe within the meaning of the regulations, and that his diabetes, hypertension and sleep apnea were not severe impairments; however, the ALJ failed to even mention the plaintiff's obesity. (R. 15). In the plaintiff's motion for summary judgment, he points out that the ALJ failed to acknowledge how the plaintiff's obesity could affect his impairments, and to consider if his obesity could have rendered any of his conditions equivalent to a listed impairment. (Paper No. 13 at 4). After reviewing the record and the ALJ's opinion, the Court finds the ALJ committed reversible error by failing to explain why she did not consider obesity an impairment, severe or not severe, at step two, and failed to consider the plaintiff's obesity at the remaining steps.

Social Security Ruling 02–1P provides that at step two, "there is no specific level of weight or BMI that equates with a "severe" impairment. Social Security Ruling ("SSR") 02–1P, 2000 WL 628049 at *2, (S.S.A.)." Additionally, the descriptive terms for levels of obesity (e.g., "severe," "extreme," or "morbid" obesity) do not establish whether obesity is or is not a "severe" impairment for disability purposes. Id. Rather, an individualized assessment should be done of the impact of obesity on an individual's functioning when deciding whether the impairment is severe. Id. Additionally, the ALJ is required to assess the combined effect of a claimant's impairments when determining whether a

---

12. C–PAP is an abbreviation for continuous positive airway pressure. Dorland's Illustrated Medical Dictionary 2108 (30th Edition 2000).

claimant has a severe impairment or combination of impairments throughout the five-step analytical process. 20 C.F.R. § 404.1523; *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir.1989). Specifically, the regulations provide that the ALJ, "will consider the combined effect of all of [claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523; *Cook v. Heckler*, 783 F.2d 1168, 1174 (4th Cir.1986) (remanding due to ALJ's failure to evaluate claimant's mental impairments in combination with her arthritis); *Walker* 889 at 49–50 (remanding due to ALJ's failure to "analyze the cumulative effect the impairments had on the claimant's ability to work"). In this case the ALJ failed to consider the plaintiff's obesity when finding the plaintiff's impairments and identifying impairments, or combinations of impairments, which were severe. (R. 15). Thus, the ALJ failed to make a determination as to whether the plaintiff's obesity alone was a severe impairment, and the effects the plaintiff's obesity had on his other impairments.

At step three, "[o]besity may be a factor that both 'meets' and 'equals' [listing] determinations." SSR 02–1P, 2000 WL 628049 at *5, (S.S.A.). While there is no listing for obesity, obesity can increase the severity of coexisting or related impairments to the extent that the combination of impairments meets a listing. *Id.* This is especially true of cardiovascular impairments. *Id.* At step three in her analysis, the ALJ states she carefully considered whether the plaintiff met Listing 4.02(b); however, she fails to make any mention of the plaintiff's obesity. (R. 15).

At step four, evaluation of obesity is important in assessing residual functional capacity, as obesity may cause serious limitations in any of the exertional functions, including sitting, standing, walking, lifting,

pushing and pulling. *Id.* at *6. Social Security Ruling 02–1p further notes that, "[t]he effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity." *Id.* Although the ALJ acknowledged that the plaintiff has sleep apnea, she failed to discuss any possible impact of the sleep apnea in combination with the obesity on the plaintiff's residual functional capacity. (R. 15). Finally, the ruling specifies that the ALJ must explain how conclusions regarding a claimant's obesity were reached. SSR 02–1p, 2000 WL 628049 at * 6. The ALJ failed to mention the plaintiff's obesity at all in her determination of his RFC.

The regulations specifically require the ALJ to consider the effects of obesity at steps three and four when combined with his other impairments. Section 1.00Q of the Listing of Impairments provides that "when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity." 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2002).

Over the period of time documented in the record, the plaintiff's weight ranged from about 270 pounds to 328 pounds. (R. 36, 155). Social Security Ruling 02–1p does not provide precise height and weight requirements for obesity. Instead it states that the existence of obesity is established by:

generally rely[ing] on the judgment of a physician who has examined the claimant and reported his or her appearance and build, as well as weight and height. Thus in the absence of evidence to the contrary in that case record, we will

accept a diagnosis of obesity given by a treating source or consultative examiner. SSR 02–1P, 2000 WL 628049 at *3, (S.S.A.). The plaintiff's examining and treating physicians consistently note his obesity throughout the record. (R. 155, 157, 173–176, 178–180, 182, 188, 223). Social Security Ruling 02–1p discusses the medical criteria for evaluating obesity. *Id* at *2. According to guidelines published by the National Institute of Health,[13] for male and female adults a body mass index of 25–29.9 is overweight while one above 30 is obese. *Id.* In the instant case, the record reflects that plaintiff's height is 5 feet, 11 inches indicating a BMI ranging from 37.7 to 45.7.[14] (R. 174). SSR 02–1p classifies a BMI greater than or equal to 40 as "extreme" obesity, further noting that this classification represents the greatest risk for developing obesity-related impairments. SSR 02–1P, 2000 WL 628049 at *3, (S.S.A.). Thus, the plaintiff has consistently been near or at the level of obesity representing the greatest risk to his health. This is clear evidence of the plaintiff's obesity, and the ALJ's failure to acknowledge and consider the effect of the plaintiff's obesity requires this case to be remanded.

**B. *The ALJ's Decision that the Plaintiff Retains the Capacity for Sedentary Work is not Supported by Substantial Evidence.***

■ The plaintiff contends that the ALJ's determination of his residual functional capacity as sedentary has no informed medical basis. (Paper No. 13 at 4–5). The defendant responds by stating that the ALJ properly evaluated the plain-

tiff's residual functional capacity, pointing to evidence in the record supportive of the ALJ's finding. (Paper No. 16 at 20).

■ At step four of the sequential analysis, the ALJ is to calculate the plaintiff's RFC, which is the plaintiff's maximum ability to work despite his impairments. 20 C.F.R. §§ 404.154(b), 416.945(b). In doing so, the ALJ is required to include in the text of his decision the reasons for making his decision. *Cook*, 783 F.2d at 1172; *Fleming v. Barnhart*, 284 F.Supp.2d 256, 271 (2003); *Miller v. Callahan*, 964 F.Supp. 939, 953 (D.Md.1997). *See also* SSR 96–8P, 1996 WL 374184 at *7, (S.S.A.) (requiring the ALJ to explain how the evidence on the record supports his conclusion through the use of a narrative discussion). In the instant case, the ALJ found the plaintiff capable of performing sedentary work; however, the ALJ failed to discuss what evidence demonstrates plaintiff's ability to perform sedentary work. (R. 21). Thus, the undersigned finds that the ALJ's opinion is not supported by substantial evidence.

According to the regulations:

Sedentary work involves lifting no more than 10 pounds at a time .... Although a sedentary job is one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). The Fourth Circuit has held that sedentary work implies the ability to sit for at least six hours out of an eight-hour day, and the ability to

---

**13.** Clinical Guidelines of the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults (NIH Publication No. 98–4083, September 1998).

**14.** Body mass index is calculated by dividing an individual's weight by the square of their

height and then multiplying the resulting sum by 703. National Center for Chronic Disease Prevention and Health Promotion, *Body Mass Index Calculator* (August 1, 2003), *available at* http://www.cdc.gov/nccdphp/dnpa/bmi/calc-bmi.htm.

stand for two to three hours per eight hour day. *Miller*, 964 F.Supp. at 954; *Wilson v. Heckler*, 743 F.2d 218, 221 (4th Cir.1986). *See also* SSR 83–10 1983 WL 31251 at *5 (defining sedentary work). When making an RFC finding of sedentary work, this Court has held that an ALJ must make specific findings regarding a plaintiff's ability to participate in " 'sustained activity on a regular basis.' " *Wander v. Schweiker* 523 F.Supp. 1086, 1096 (D.Md.1981)(quoting 20 C.F.R. § 404.1505(b)) (remanding a case where an ALJ found a claimant capable of sedentary work because the ALJ's finding that the plaintiff retained sufficient RFC to perform sedentary work was wholly devoid of evidentiary support and the ALJ had made no specific findings regarding the plaintiff's physical ability to sustain activity on a regular basis). *See also Miller*, 964 F.Supp. at 954–955 (1997)(criticizing the Commissioner for failing to discuss what evidence shows that the plaintiff could perform the lifting, walking, standing, repetitive hand-finger action and other exertional requirements of sedentary work). In *Wander*, the Court also criticized the ALJ for not making specific findings regarding the plaintiff's ability to meet even the very general exertional requirements for sedentary work. *Id.* Moreover, Social Security Ruling 96–8p provides that, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8p, 1996 WL 374184 at *7, (S.S.A.).

In the instant case, the ALJ failed to provide any explanation or narrative discussion as to how she determined the plaintiff retains the RFC for sedentary work. Such a finding, absent any analysis, makes it impossible for this Court to apply the substantial evidence test. *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir.1977) (holding it is impossible to apply the substantial evidence test where the ALJ has failed to sufficiently explain his decision).

The ALJ provides a detailed summary of the medical evidence, but fails to engage in any discussion as to how this evidence supports a sedentary RFC finding. (R. 15–21). There are five reports in the record which provide evidence as to the plaintiff's RFC, two based on records review and three by two examining physicians. (R. 158–165, 236–244, 141–144, 167–170, 222–224). The first in time is a medical report completed by the plaintiff's treating physician, Dr. Vasantha–Kumar on October 12, 2001. (R. 141–144). Dr. Vasantha–Kumar's report indicates that the plaintiff could not perform the exertional requirements of sedentary work because he can only sit for four hours in an eight hour workday. (R. 142). This report was summarily rejected by the ALJ for being unsupported by substantial evidence. (R. 21). The second and next is the January 9, 2002 physical RFC assessment completed by DDS physician Dr. Biddison, which indicates the plaintiff can do sedentary work;[15] however, the ALJ discredits Dr. Biddison's report stating that it is, "unsupported by the record." (R. 21). On October 2, 2002, a second physical RFC assessment dated October 3, 2002 was completed (by an unnamed doctor) concluding that the plaintiff retains the exertional capacity for sedentary work.[16] (R. 236–244). On

---

**15.** Dr. Biddison's report indicated that the plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk at least two hours in an eight hour work day and sit for about

six hours in an eight hour work day. (R. 159).

**16.** The report indicated the plaintiff could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, stand and/or walk at

February 28, 2002, Dr. Vasantha–Kumar completed a second medical report indicating the plaintiff could meet the exertional requirements for sedentary work;[17] but also stated that the plaintiff was unable to work for at least two months ending March 12, 2002. (R. 169). However, the ALJ states she "carefully considered" this opinion, but "accorded [it] little weight, stating that the opinion, is not binding under the Social Security Act." (R. 22). Significantly, the plaintiff suffered a heart attack only one week after Dr. Vasantha–Kumar completed this assessment. (R. 187). On August 19, 2002, DDS physician, Dr. Sejadi, examined the plaintiff and concluded that he was, "unable to perform any gainful employment due to his problem." (R. 223).

Of this evidence, the ALJ outright discredits two of the medical assessments (the RFC assessment completed by Dr. Biddison and Dr. Vasantha–Kumar's October 12, 2001 medical report), assigns little weight to the second RFC by Dr. Vasantha–Kumar (dated February 28, 2002), and fails to assign weight to Dr. Sejadi's August 19, 2002 findings or to the October 2, 2002 RFC assessment. (R. 21, 22, 17).

Also, of this medical evidence, only Dr. Sejadi's August 19, 2002 cardiac evaluation and the October 2, 2002 RFC assessment completed by an non-examining DDS physician were completed after the plaintiff's March 7, 2002 heart attack. While the ALJ has a duty to evaluate all medical opinions,[18] she fails to evaluate either of these opinions in concluding that the plaintiff, "retains the residual functional capacity to perform sedentary exertion," and that, "[h]is exertional impairments limit him to standing/walking 2 hours in an 8–hour day, sit[ting] for 6 hours in an 8–hour day, lift 20 pounds occasionally, and 10 pounds frequently. He has the residual functional capacity to occasionally climb, balance, stoop, kneel, crouch or crawl."

While the October 2, 2002 RFC assessment supports a determination that the plaintiff is capable of sedentary work, it is not substantial evidence to that effect, particularly in light of Dr. Sajadi's assessment that he is unable to perform any gainful employment. (R. 223). "[A]n examination of a claimant adds such significant weight to a medical opinion as to the presence or absence of disability that, without it, the opinion, standing alone, cannot constitute substantial evidence to support a conclusion which relies solely on it." *Martin v. Sec'y of Health, Education and Welfare,* 492 F.2d 905, 908 (4th Cir.1974). *See also Hayes v. Gardner,* 376 F.2d 517, 520–21 (4th Cir.1967). Thus, the October 2, 2002 report alone, the only medical opinion issued after the plaintiff's heart attack, and the only medical assessment supporting her conclusions that the ALJ does not discredit, is not substantial evidence to support the ALJ's finding.

Additionally, the ALJ failed to consider evidence of the plaintiff's March 18, 2003 hospitalization for angina in determining his residual functional capacity. (R. 265). If the ALJ does not analyze all the evidence and fully explain "the weight he has

least two hours in an eight hour day, and sit about six hours in an eight hour day. (R. 237).

17. Dr. Vasantha–Kumar's report indicated that the plaintiff could lift and carry ten pounds, sit for eight hours of an eight hour work day and stand for three hours of an eight hour workday. (R. 168).

18. Regardless of its source, every medical opinion should be evaluated. 20 C.F.R. § 416.927(d). In evaluating medical evidence, the ALJ should consider, among other things, the examining and treatment relationship between the plaintiff and the physician, the physician's specialty, and the supportability and consistency of the physician's claims. *Id.*

given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Arnold*, 567 F.2d at 259. Other circuits have noted that although the ALJ is not required in his written decision to recount every piece of evidence, if the ALJ's decision does not mention important material evidence, the court can assume that the evidence was not considered and can remand the case for the ALJ to consider the record. *See Likes v. Callahan*, 112 F.3d 189, 191 (5th Cir.1997); *Jones v. Chater*, 65 F.3d 102, 104 (8th Cir.1995). The plaintiff's March 2003 hospitalization at which he was diagnosed with, among other things, unstable angina pectoris secondary to coronary artery disease, is important evidence as to his health. (R. 265). While the ALJ briefly mentions this hospitalization in her recitation of the medical evidence, she fails to address any impact of this evidence on her assessment of the plaintiff's residual functional capacity. (R. 17–18). This Court cannot determine if the ALJ's RFC determination is supported by substantial evidence absent a discussion of the plaintiff's March 2003 hospitalization.

■ The ALJ's conclusory decision on RFC and thus disability is in direct contravention with social security rulings and case law which require the ALJ to make a detailed assessment of the plaintiff's RFC and exertional capabilities for sedentary work. *Cook*, 783 F.2d at 1172; *Fleming*, 284 F.Supp.2d at 271; *Miller*, 964 F.Supp. at 953 (D.Md.1997); SSR 96–8P, 1996 WL 374184 at *7. There is evidence on the record supporting the ALJ's finding of sedentary work capability; but, there is also evidence indicating that the plaintiff is not capable of sedentary work. (R. 159, 168, 142, 223). It is the duty of the ALJ to make findings of fact and resolve conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d at 1453, 1456 (4th Cir.1990)(quoting *King v. Califano*, 599 F.2d 597, 599 (4th Cir.1979)). It is not for this Court to weigh the evidence and decide how the ALJ concluded the plaintiff's RFC. *Id.* Because the ALJ provided no support for her conclusion, the Court finds the RFC is not supported by substantial evidence.

### III. Conclusion

For the foregoing reasons, the undersigned **DENIES** the plaintiff's Motion for Summary Judgment, and **DENIES** the defendant's Motion for Summary Judgment, but **REMANDS** the case back to the agency for further proceedings consistent with this opinion.

For the foregoing reasons, an order will be entered separately reversing the decision of the agency and remanding the case for further proceedings.