**Barbara WILLOUGHBY, Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant.**

No. 02–CV–6340L.

United States District Court, W.D. New York.

Aug. 10, 2004.

544

Lawrence I. Heller, Rochester, NY, for Plaintiff.

Christopher V. Taffe, Rochester, NY, for Defendant.

## DECISION AND ORDER

LARIMER, District Judge.

### INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner") that Barbara Willoughby ("plaintiff") is not disabled under the Social Security Act ("the Act") and, therefore, is not entitled to Social Security Income ("SSI") benefits. Plaintiff applied for benefits under Title XVI of the Act on February 10, 2000, alleging disability based on a combination of impairments, including fibromyalgia, morbid obesity, cervical impairment, hypertension, osteoarthritis, and degenerative disc disease. (T. 62–64; 82–89).[1] Her application was denied both initially and upon reconsideration. (T.41–52). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October. 23, 2001. (T. 22–54). The ALJ, after considering all of the evidence, found that plaintiff was not disabled within the meaning of the Act. (T. 6–14). The ALJ's decision became the final decision of the Commissioner when, on April 29, 2002, the Appeals Council denied plaintiff's request for review. (T. 2–3). Plaintiff timely filed this action to review the Commissioner's decision.

Both the Commissioner and plaintiff have moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). (Dkts. 6 and 9). For the reasons discussed below, the Commissioner's motion is denied. The plaintiff's motion is granted, and the case is remanded for further administrative proceedings consistent with this decision and order.

### DISCUSSION

**A. Standards for Determining Disability**

A person is considered disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impair-

---

1. "T. __" refers to the page of the administrative transcript filed by the Commissioner.

ment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment (or combination of impairments) is disabling if it is of such severity that a person "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." *Id.* at § 1382c(a)(3)(B).

To determine whether a person is disabled within the meaning of the Act, the ALJ proceeds through a five-step sequential evaluation. *Bowen v. City of New York,* 476 U.S. 467, 470–71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986); *Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir.1999).[2] Once a person has proven steps one through four, the burden then shifts to the Commissioner to show that the person "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir.1999) (quoting *Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986)).

## B. The ALJ's Decision

Here, the ALJ found that plaintiff had degenerative joint disease of the cervical and lumbar spine, osteoarthritis, and morbid obesity. He found that these impairments were "severe" but did not, alone or in combination, meet or equal a listed impairment. (T. 10). The ALJ then determined that plaintiff had the residual functional capacity to perform the full range of light work. (T. 12). At step five of the sequential evaluation, the ALJ used medical-vocational Rule 202.20 to direct a finding that, given plaintiff's age (48 years old at the time of her application), education (GED diploma), and past relevant work experience (none), she was not disabled. *See* 20 C.F.R. pt. 404, subpt. P, app. 2; (T. 13).

## C. Standards of Review

■ The Commissioner's decision that plaintiff was ineligible to receive SSI benefits must be affirmed if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Veino v. Barnhart,* 312 F.3d 578, 586 (2d Cir.2002); *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S.

**2.** The Second Circuit has described the five-step process as follows:

First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform. *Tejada,* 167 F.3d at 774.

197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Thus, "[i]t is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir.1999). Rather, "[w]here the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," a court cannot substitute its own judgment for that of the Commissioner. *Veino,* 312 F.3d at 586.

■ A reviewing court also must independently determine if the Commissioner applied the correct legal standards in finding that plaintiff was not disabled. *Townley v. Heckler,* 748 F.2d 109, 113 (2d Cir. 1984); *accord Tejada v. Apfel,* 167 F.3d 770, 773 (2d Cir.1999). "Failure to apply the correct legal standards is grounds for reversal." *Townley,* 748 F.2d at 112. In this regard, the Court should first review the legal standards applied and then, if the standards were applied correctly, consider the substantiality of the evidence. *Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir. 1987).

### D. Fibromyalgia

■ On appeal, plaintiff argues that the ALJ improperly disregarded the medical evidence in the record pertaining to her diagnosis of fibromyalgia. I agree. The ALJ's decision that plaintiff did not have fibromyalgia[3] is based on legal error and is not supported by substantial evidence.

Here, at step two of the sequential evaluation, the ALJ determined that, although plaintiff had "complained" of chronic fibromyalgia to her physicians, she failed to establish through competent medical evidence that she had that condition. According to the ALJ, "[n]o such impairment is medically established by reproducible trigger points." (T. 10). In so holding, the ALJ rejected the opinion of Dr. Susan Wegman, plaintiff's treating physician because, according to the ALJ, Dr. Wegman did not identify "reproducible trigger points." The ALJ chose instead to place more weight on the opinion of Dr. Karl Auerbach, the SSA's consultative examining physician, whose evaluation of the plaintiff did not include a diagnosis of fibromyalgia. (T. 10). This was error.

■ It has long been recognized that the opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence. *Green–Younger,* 335 F.3d at 106; *Rosa,* 168 F.3d at 78; 20 C.F.R. § 416.927(d)(2). In analyzing a treating physician's opinion, "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion," nor can he

---

**3.** Fibromyalgia is defined as "[a] syndrome of chronic pain of musculoskeletal origin but uncertain cause. The American College of Rheumatology has established diagnostic criteria that include pain on both sides of the body, both above and below the waist, as well as in an axial distribution (cervical, thoracic, or lumbar spine or anterior chest); additionally there must be point tenderness in at least 11 of 18 specified sites." Stedman's Medical Dictionary 671 (27th ed.2000).

Numerous courts have recognized that evaluating the nature and severity of this condition in the context of social security disability review has proven to be difficult because of its elusive nature and the lack of objective tests that can conclusively confirm the existence of the disease. *See, e.g., Green–Younger v. Barnhart,* 335 F.3d 99, 108 (2d Cir.2003); *Harman v. Apfel,* 211 F.3d 1172, 1179–80 (9th Cir. 2000); *Kelley v. Callahan,* 133 F.3d 583, 585 n. 2 (8th Cir.1998); *Sarchet v. Chater,* 78 F.3d 305, 306 (7th Cir.1996); *Preston v. Sec. of Health and Human Servs.,* 854 F.2d 815, 818 (6th Cir.1988). Nevertheless, despite the lack of objective medical screening devices, fibromyalgia is a potentially disabling impairment that can provide the basis for disability insurance and supplemental security income benefits in the appropriate case. *See Green–Younger,* 335 F.3d at 108–109; *Soto v. Barnhart,* 242 F.Supp.2d 251, 256–57 (W.D.N.Y.2003).

"set his own expertise against that of a physician who [submitted an opinion to or] testified before him." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998) (citing *McBrayer v. Sec. of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir.1983)). When controlling weight is not given to a treating physician's medical opinion, the ALJ must explain his reasons for the weight he does assign to that opinion. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000).

Here, the ALJ improperly discounted Dr. Wegman's diagnosis of fibromyalgia for the reason that it was not supported by objective medical findings. He also substituted his own judgment for competent medical opinion. The ALJ reasoned that Dr. Wegman's failure to specify in her medical records plaintiff's specific "trigger points" somehow undermines the diagnosis. But, this ignores the medical record and the basis for Dr. Wegman's opinion. Dr. Wegman's opinion was based, in part, on the report of a specialist to whom she referred plaintiff for her fibromyalgia symptoms. Dr. Garnetta Ely, a rheumatologist, evaluated plaintiff in August 1996 at Dr. Wegman's request and diagnosed plaintiff with fibromyalgia. Dr. Ely found that plaintiff had eleven tender points out of eighteen and experienced other symptoms consistent with the disease. (T. 252–53). Dr. Ely specified the basis of her findings (including the eleven positive tender points) in a detailed report she sent to Dr. Wegman. Since this evaluation, Dr. Wegman has treated plaintiff for her fibromyalgia symptoms by prescribing pain medication and monitoring its effectiveness. (T. 122, 123, 126, 246, 247). Therefore, Dr. Wegman's failure to specify which tender points formed the basis of the diagnosis is not a sufficient basis on which to reject her opinion. Importantly, the ALJ never addressed Dr. Ely's report in his decision, nor did he explain why no weight was given to that important evaluation.

In addition, Dr. Wegman's opinion is consistent with the record as a whole and is not contradicted by substantial medical evidence. Dr. Wegman's treatment records, as they pertain to fibromyalgia, show that plaintiff consistently complained of pain throughout her body, including her head, face, neck, shoulders, chest, arms, upper and lower back, legs, and buttocks. (T. 122–32, 190–92, 174–76, 245–48). Dr. Wegman completed a residual functional capacity assessment in which she noted several limitations in plaintiff's ability to do basic work activities, including lifting no more than ten pounds and limitations on prolonged sitting, standing, and walking, and limitations in the ability to stoop, kneel, crawl, reach, push, or pull. (T. 170–72). She also noted that "the nature of [plaintiff's] symptoms are unpredictable" and that plaintiff had "good days and bad days." (T. 172). Dr. Wegman listed the diagnoses that caused these symptoms as "cervical fusion, osteoarthritis knees and left thumb, fibromyalgia, and low back pain." (T. 172).

Furthermore, it was error for the ALJ to place great weight on the ambiguous assessment by the SSA's consultative examining physician, Dr. Karl Auerbach, and use it as a basis to reject Dr. Wegman's opinion. (203–207). After examining plaintiff once in March 2000, Dr. Auerbach diagnosed plaintiff with hypertension, obesity, esophagitis, osteoarthritis, cervical injury, degenerative disc disease in the lower back, and arthritis of the shoulder. (206). Dr. Auerbach did not diagnose plaintiff with fibromyalgia. Nor, however, did Dr. Auerbach give his opinion that plaintiff *does not* suffer from fibromyalgia. The only mention of fibromyalgia in his assessment comes at the very end of his evaluation. Under a heading entitled "Re-

view of Provided Material," Dr. Auerbach writes: "[Plaintiff] also states she has fibromyalgia, no trigger points are *noted*. She provided a health history listing that she had prepared and it was reviewed." (206) (emphasis added).

It is unclear what Dr. Auerbach meant by this statement. He may have meant that the records plaintiff showed him at the examination indicated that plaintiff had fibromyalgia but did not state with specificity the tender points used as a basis for that diagnosis. Alternatively, Dr. Auerbach may have meant that he evaluated plaintiff's fibromyalgia symptoms and found that plaintiff tested negative in all eighteen tender points. The ALJ clearly assumed it was the latter, as evidenced by that part of his decision in which he states that, "Dr. Auerbach found no trigger points and did not assess the claimant with the condition." (T. 10). However, nothing else written by Dr. Auerbach in his assessment supports that conclusion. Furthermore, that interpretation is not consistent with the record as a whole. Therefore, the ALJ's reliance on this single ambiguous statement from a one-time examining physician as being sufficient "contradictory" medical evidence to warrant rejection of a treating physician's opinion was error. *See Shaw*, 221 F.3d at 134. That is particularly so here, where the record contains evidence that Dr. Wegman's assessment is supported by the findings of a specialist, is based on an established treatment relationship with plaintiff, and is consistent with the record as a whole. 20 C.F.R. § 416.927(d)(2) (providing that the factors to consider when weighing a treating physician's opinion are, among others: the length, nature, and extent of the treatment relationship; the evidence in support of the opinion; and the opinion's consistency with the record as a whole).

By taking fibromyalgia out of the sequential evaluation at step two, the ALJ failed to consider the effect the disease has on plaintiff's residual functional capacity and ability to perform basic work activities. Therefore, the case needs to be remanded for further administrative proceedings for consideration of fibromyalgia at steps three, four and five of the disability review process.

### E. Credibility

■ In addition, the ALJ's credibility analysis was flawed. The ALJ noted that plaintiff testified at the disability hearing that she is severely limited by her physical impairments and that she was capable of doing very little in a given day. The ALJ found that plaintiff's subjective complaints of pain and limitation were not credible because of a "dearth of abnormal clinical signs and/or findings." Therefore, he reasoned that, although plaintiff may be limited in her daily activities, "such a degree of inactivity is not reasonably related to any medically determined impairment of record." (T. 12).

As discussed above, however, the ALJ did not consider fibromyalgia as a medically determinable impairment and did not assess whether the degree of inactivity plaintiff testified to is consistent with such a condition. On remand, the ALJ should reconsider plaintiff's testimony and complaints of pain, fatigue, and limitations in daily activity in light of the diagnosis of fibromyalgia. In this regard, the ALJ should not simply discount plaintiff's credibility based on the fact that there are no lab results or other objective medical findings to support her testimony about her limitations. The ALJ must consider the fact that there is no clinical test that can identify fibromyalgia or determine its severity. In fact, as a number of courts have recognized, the absence of abnormal clini-

cal signs and findings (such as swollen joints, limited ranges of motion, or weakened muscles) is consistent with a diagnosis of fibromyalgia. *See Green–Younger,* 335 F.3d at 109 ("these negative findings simply confirm a diagnosis of fibromyalgia by a process of exclusion . . . ."); *Gang v. Barnhart,* No. 02–CV–3647, 2003 WL 22183423, *5–*6 (E.D.N.Y. Sept. 23, 2003) ("a lack of abnormal neurological findings actually confirm[s] a diagnosis of fibromyalgia") (internal quotations omitted); *see also Sarchet,* 78 F.3d at 307; *Preston,* 854 F.2d at 819; *Soto,* 242 F.Supp.2d at 256–57.

## F. Other errors

■ Because the case is remanded for further administrative proceedings, the Court notes two other errors committed by the ALJ that should be addressed on remand. First, the ALJ found that plaintiff suffered from morbid obesity as a medically determinable impairment. (T. 10). However, the ALJ failed to consider the effects that her obesity had on the severity of her impairments, her residual functional capacity, and her ability to do basic work activities, as required by Social Security Ruling 00–3p. *See* Social Security Ruling 00–3p (entitled "Titles II and XVI: Evaluation of Obesity"), 2000 WL 33952015 (S.S.A.)[4]; *see also Shoate v. Barnhart,* No. C02–02162, 2003 WL 21556939, *4 (N.D.Cal. July 3, 2003) (remanding case where the ALJ did not consider the evidence of plaintiff's obesity in determining whether plaintiff suffered from a severe impairment or combination of impairments); *Manning v. Barnhart,* No. 01–1151, 2002 WL 31027937, *2–*3 (D.Kan. Sept.9, 2002) (ALJ was required to make clear at step three and in determining

plaintiff's residual functional capacity the impact of plaintiff's obesity on her impairments). On remand, the ALJ should follow the guidelines set forth in SSR 00–3p regarding consideration of the effects of obesity, particularly at steps three and four of the sequential evaluation.

■ Second, the ALJ's residual functional capacity assessment that plaintiff can perform the full range of light work is not supported by substantial evidence. The ALJ bases this conclusion on the assessment of Dr. Tzetzo, the SSA's review physician, who first considered plaintiff's application for benefits. Dr. Tzetzo is a psychiatrist who did not examine plaintiff. Instead, he reviewed plaintiff's medical records and expressed his opinion that plaintiff could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand or walk six hours in an eight-hour workday, and was otherwise unlimited in her ability to push and pull. (T. 226–33).

Dr. Tzetzo's opinion, however, is inconsistent with the residual functional capacity assessments of Dr. Wegman (T. 169–72) and plaintiff's treating chiropractor, Kimberly Valentine (T. 210–14), both of whom found that plaintiff was limited to less than the full range of sedentary work. It is also inconsistent with the record as a whole, which includes plaintiff's own statements about her ability to do basic work activities. Although Dr. Wegman acknowledged that her assessment was based on plaintiff's subjective complaints about her pain and fatigue (T. 169, 245), given the nature of fibromyalgia, that does not necessarily undermine the evaluation. Moreover, placing such great weight on the opinion of a nonexamining *psychiatrist* regarding plaintiff's ability to perform the

---

4. SSR 00–3p was superceded by SSR 02–1p and is currently the controlling ruling regarding obesity. However, for purposes of this discussion, SSR 00–3p was the controlling ruling at the time of the ALJ's decision.

exertional demands of work is not appropriate in this case in light of the nature of plaintiff's alleged impairments. *See* 20 C.F.R. § 416.927(f) (when determining the weight to give a nonexamining physician's opinion, the ALJ should consider the same factors used when evaluating a treating physician's opinion, including the nature of the treatment relationship, the consistency of the opinion with the record as a whole, and whether the opinion is given by a specialist). On remand, the ALJ should consider recontacting Dr. Wegman to obtain a more definitive opinion from her regarding plaintiff's ability to perform basic work activities. Alternatively, the ALJ may need to develop the record further by obtaining the opinion of a rheumatologist.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt.# 6) is denied. Plaintiff's motion for judgment on the pleadings (Dkt.# 9) is granted, in part, and the case is remanded to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this decision and order.

IT IS SO ORDERED.