**Christine A. MACAULAY, Plaintiff,**

v.

**Michael J. ASTRUE, Commissioner of Social Security, Defendant.**

No. 2:08–CV–32.

United States District Court, D. Vermont.

April 27, 2009.

Phyllis E. Rubenstein, Law Office of Phyllis E. Rubenstein, Montpelier, VT, for Plaintiff.

Kevin J. Doyle, AUSA, United States Attorney's Office District of Vermont, Burlington, VT, for Defendant.

### OPINION AND ORDER

JOHN M. CONROY, United States Magistrate Judge.

Plaintiff Christine A. Macaulay is a claimant for Social Security Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). She brings this action against the Social Security Commissioner pursuant to 45 U.S.C. § 405(g) to reverse the Commissioner's final decision that she is not disabled and is therefore not entitled to benefits. On September 8, 2008, Macaulay filed a Motion

for Summary Judgment, and on January 7, 2009, the Commissioner filed a Motion for an Order Affirming the Decision of the Social Security Administration ("SSA").

For the reasons set forth in this Opinion, Macaulay's motion (Doc. 9) is GRANTED and the Commissioner's motion (Doc. 15) is DENIED.[1]

### PROCEDURAL HISTORY

Macaulay filed an application for DIB on December 14, 2005, and an application for SSI on August 11, 2006, alleging disability as of January 1, 2004. (Administrative Record "AR" 45, 56, 76, 157). Her applications were denied initially and on reconsideration and Macaulay timely requested a hearing. (AR 27–29). A hearing was held before an Administrative Law Judge ("ALJ") on September 25, 2007, at which Macaulay, represented by counsel, testified. (AR 358–294). In a decision dated October 18, 2007, the ALJ found that Macaulay was not disabled and therefore not entitled to DIB or SSI. (AR 12–19). The Appeals Council subsequently denied review, and Macaulay filed the Complaint in this action on February 22, 2008. (Doc. 3).

### STANDARD OF REVIEW

In reviewing the ALJ's decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002); *see* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Even if a court could draw different conclusions after an independent review of the record, the court must

---

1. In accordance with the provisions of 28 U.S.C. § 636(c) the parties consented to have the undersigned conduct any and all proceedings in this case, including the entry of a final judgment. (Doc. 5).

uphold the Commissioner's decision when it stands on substantial evidence and the proper legal principles have been applied. *See* 42 U.S.C. § 405(g). Furthermore, the court may not substitute its judgment for that of the Commissioner. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir.1998).

However, if the "evidence has not been properly evaluated because of an erroneous view of the law . . . the determination of the [Commissioner] will not be upheld." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979). Finally, it is the Commissioner, and not the court, that resolves evidentiary conflicts and determines credibility issues. *Aponte v. Secretary of HHS*, 728 F.2d 588, 591 (2d Cir. 1984).

## FACTS AND BACKGROUND

Christine Macaulay is a 45 year old woman that has suffered from lower back pain, obesity, and depression. (AR 216–217). She alleges a disability onset date of January 1, 2004. (Doc. 18 at 2).

### I. Medical Record

The medical record in this case reveals that Macaulay has sought treatment for her back pain, obesity, and depression over the past decade,[2] and that the focus of her most recent treatment has been on her back pain and obesity, which contributes to the discomfort in her lower back.

In March 2004 Macaulay's primary care physician, Dr. Kenneth Borie, noted that he met with Macaulay regarding her obesity, and that several means of mitigating the problem proved inadequate. He noted that she "tried Weight Watchers for 3 months [without] any loss," and that she "met [with a] nutritionist" but "did not find [that] helpful." (AR 204). He also noted that Macaulay denied snacking, used a stationary bike for 20 minutes per day, and walked her dog about 1 mile per day. *Id.* Dr. Borie also discussed weight loss strategies with Macaulay in October 2006. (AR 294).

In February 2006 an agency physician completed a Residual Functional Capacity Report on Macaulay, and indicated that she is "obese with BMI of 43, [which] is felt to exacerbate back pain by both claimant and her physician . . . has a normal gait, toe and heel walks well, strength, reflexes and sensation are intact . . . Xrays show congenital pars defect with grade I spondylolisthesis . . . Movements normal." (AR 249). This physician also commented on Macaulay's daily activities, noting that she is "able to do all housechores, does everything at this time due to spouse in treatment for cancer. Cooks, cleans, does laundry, drives and shops." (AR 253).

In an effort to alleviate her back pain, Dr. Borie referred Macaulay to Dartmouth Hitchcock Medical Center later in 2006 for a consultation with orthopedic surgeon Dr. Dilip Sengupta. Macaulay initially met with Advanced Registered Nurse Practitioner (ARNP) Linda Brown. Brown did not draw any ultimate conclusions during this initial visit, but her findings appear favorable: for example, she observed that Macaulay was able to "[a]mbulate in the clinic with a non-antalgic gait, can heel-walk, toe-walk, and squats without difficulty." (AR 240). She noted further that "[i]nspection of her spine reveals grossly level shoulders, hips, and knees. No obvious leg length discrepancy, muscle spasm, scoliosis, or gibbus deformity." *Id.* Macaulay had a motor evaluation of "5/5 . . . with no muscle atrophy noted." *Id.* RN Brown did state that "straight leg raise causes pain that radiates down her leg in both sitting and lying position," but explained further that Macaulay "is unable to differentiate this pain from muscle stretching." *Id.*

Macaulay met with Dr. Sengupta for the first time in August 2006. During this consultation Dr. Sengupta observed that she "has difficulty with weight reduction and has truncal obesity." With regard to her lower back, he noted that she "has L4–L5 and L5–S1 disc degeneration and grade 1 spondylolisthesis at L5–S1 due to spondylotic defect

---

**2.** Macaulay does not challenge the ALJ's finding that her depression and anxiety are not "severe impairments." In any case, Macaulay's treating physician opined that none of her mental impairments cause any vocational limitations (Doc. 9–2 at 6), and Macaulay testified that she has not undergone any mental health counseling since 1998. (AR 379).

at L5 pars." [3] (AR 170). He described her back pain as "mild-moderate," but also noted that her prior treatments of an epidural steroid injection along with physical therapy and pain medication did not provide any significant relief. *Id.* He recommended a conservative course of treatment that did not include surgery, stating, "[h]er mobility is reasonably well and her intensity of back pain is only mild-moderate. I would be reluctant to offer two-level surgery, particularly in the background of her truncal obesity." (AR 171). He added that, unless her back pain worsened, he would advise treatment "in the form of physical therapy and pool therapy," along with over-the-counter pain medication "like Tylenol plus ibuprofen or Tylenol plus naproxen." [4] *Id.*

Macaulay also met with Physician's Assistant Ryan Card during her August 2006 visit to Dartmouth Hitchcock. PA Card described a patient that "is a pleasant, healthy-appearing, overweight female." (AR 226). Card observed that Macaulay "ambulates about the room under her own power with a slow, yet steady gait ... She has 5/5 strength in all muscle groups. [Her] hips and knees move well without pain or guarding. Her back exam is benign. Truncal range of motion is 80 degrees of forward and 20 degrees of extension with pain at extremes of both." *Id.* Card concurred in the conservative treatment approach, noting that at "this point in time we have mutually agreed to continue with conservative care with physical therapy and non-narcotic pain medications from her primary care physician." (AR 262).

In between visits to the specialists at Dartmouth Hitchcock, in October 2006, Macaulay asked Dr. Borie to complete a Medical Certification for the Vermont Department of Labor on her behalf. (AR 143). On this form

Dr. Borie noted that he was "not sure about [her] prognosis. She needs more treatments. She's had spinal injections. She may need surgery." *Id.* At this point, though, Dr. Borie did not view Macaulay's back pain as a permanent impairment, opining that "she may improve greatly [with] surgery." *Id.*

In November 2006 Macaulay returned to Dartmouth Hitchcock for a follow-up appointment with Dr. Sengupta. After this visit, Dr. Sengupta remarked that Macaulay "is overweight at 245 pounds ... and her truncal obesity [is] one of the factors causing increased back pain." He noted further, though, that based on her self-report her pain remained below 5 on a scale of 10. (AR 258). Dr. Sengupta also reaffirmed his plan for a conservative course of treatment, and emphasized that a loss in weight, with or without surgical intervention, "will certainly help her back pain relief and she may not need any surgical intervention in her spine." *Id.*

On February 9, 2007, Dr. Borie saw Macaulay for a general physical. He remarked in her physical report that "she is a ... female with obesity, spondylolysis, arthritis and depression." (AR 291). He observed that "her back continues to be a problem, but the Naproxen seems to keep things somewhat under control, not nearly as good as she would like. She is walking about a mile a day. She is still struggling with obesity. She is trying to eat more fruits and vegetables." *Id.* With regard to her symptoms, Dr. Borie stated that "[s]he [does] have shortness of breath if she exerts herself a lot, but with walking she is fine." *Id.* At this time Macaulay weighed 254 pounds.

Dr. Borie prepared a Medical Source Statement for the SSA on June 14, 2007. [5]

---

3. Spondylolysis is a defect in the pars interarticularis of the vertebra; spondyloisthesis is the forward displacement of one vertebra over another, usually of the fifth lumbar over the body of the sacrum, or of the fourth lumbar over the fifth, usually due to a developmental defect in the pars interarticularis. DORLAND'S MEDICAL DICTIONARY 1563 (Saunders 28th ed.1994).

4. Naproxen is an anti-inflammatory agent that is generally used for the treatment of osteoarthritis

and rheumatoid arthritis. DORLAND'S MEDICAL DICTIONARY 1100 (Saunders 28th ed.1994).

5. It is difficult to know the extent to which this report is based on Dr. Borie's actual medical opinion. On page 6 the form states that "the limitations above are assumed to be your opinion regarding current limitations only." Following this statement, which does not prompt for any kind of response, Dr. Borie wrote in, "Yes, but when I questioned her regarding what she can [and] cannot do, these were her responses." (AR

(AR 299–305). In this report he indicated that Macaulay can "occasionally" lift or carry up to 10 or 20 pounds, can stand for two hours for a total of five hours in an eight hour workday, can sit for two hours for a total of five hours in an eight hour workday, and can walk for one hour for a total of three hours in an eight hour work day. (AR 299). He also noted that Macaulay "does not lie down during the day," and that she "cannot ride a bicycle." (AR 300–301). Also, in a separate office note prepared on the same day, Dr. Borie wrote that Macaulay weighed 262.2 pounds, and that she was only walking three days a week. He recommended that she walk every day. (AR 309).

In September 2007 Dr. Borie explained that he and Macaulay decided against the use of narcotic medication "because of the progressive nature of needing more and more narcotics to control pain and I told her it was a bad road to go down." (AR 406).

Since her alleged onset of disability, Macaulay's back pain has been treated with a medial branch block, a lumbar epidural steroid injection, physical therapy, and non-narcotic pain medication. (AR 235, 260, 291).

## II. Macaulay's Administrative Hearing Testimony and Self–Reporting

In her applications for SSI and DIB benefits, and in her administrative hearing testimony (and contrary to what she reported to her treating physicians), Macaulay stresses an inability to work due to unremitting and debilitating lower back pain that is so intense she "can't even get out of bed" some days. (AR 99). With regard to her daily activities, Macaulay reported in a Function Report to the SSA that she "pretty much putter[s] around the house doing small jobs like cleaning take naps or if I have to go to work." (AR 102). She reported doing laundry "sometimes," vacuuming once per week, and doing the dishes, though these activities can take her "all day" to complete. (AR 119). She reported that does not enjoy cooking or baking anymore, but is nonetheless able to prepare sandwiches and canned foods (but

"never several courses"). (AR 104). On a separate Function Report Macaulay noted that she is able to make coffee, do any traveling that she needs to, and go to work if she needs to. She tries to limit such activities, however, in order to avoid experiencing back pain. (AR 117). Finally, in January of 2006 Macaulay reported that she took care of her husband, who is a cancer patient. This consisted of doing his cooking and cleaning, as well as managing his prescription medications and medical appointments. (AR 118).

During her testimony before the ALJ, Macaulay said that she takes naproxen for her back pain to no avail. (AR 373). She testified that she has been unable to garden since the onset of her disability, and is able to prepare only frozen food meals. (AR 381). According to her testimony, her back pain is aggravated by sitting for more than 30 to 45 minutes, standing for more than 20 minutes, and walking for more than two-tenths of a mile. (AR 372). She testified that her pain renders her unable to sleep throughout the night, and she explained how while she is able to drive, sitting in a car exacerbates her pain and she had to take several breaks during the car ride between her home and the hearing location. (AR 379). Finally, she testified that her obesity results in shortness of breath. (AR 374). She acknowledged Dr. Borie's advice to walk everyday in order to lose weight, but commented that it is "easier said than done." (AR 391).

## III. Relevant Work History

In a Work History Report completed by Macaulay (AR 125), she described the physical requirements of her "pre-assembly" furniture assembly position. She described it as requiring her to stand all day (eight hours) with no sitting, as well to walk for two of those eight hours. She said there was no need to climb, stoop, kneel, crouch, crawl, or reach. She had to "write, type or handle small objects" for two hours per day. She never lifted anything greater than ten pounds.

304). Thus, it appears that this Medical Source Statement may be nothing more than Macaulay's own responses.

Macaulay affirmed these basic requirements at the administrative hearing, testifying that she did not have to do heavy lifting. She said she "would put door knobs on" and not actually construct or assemble the larger parts of the furniture. When asked if she would have to physically lift different parts of the furniture she replied, "Oh, no." (AR 388–389). She added that she was sometimes required to use a drill, and she also engaged in some sanding and staining. *Id.*

## DISCUSSION

To determine whether a claimant is "disabled" within the meaning of the Social Security Act, the regulations require application of the now familiar five step sequential evaluation process. *Butts v. Barnhart*, 388 F.3d 377, 380–381 (2d Cir.2004); 20 C.F.R. §§ 404.1520; 416.920.[6] The answer to the inquiry at each step determines whether the next step's question must also be answered. Step one asks whether the claimant has engaged in substantial gainful activity since the alleged onset date of disability; if not then step two asks whether the claimant has any "impairments" that are "severe"; if one or more "severe impairments" are found then step three asks whether any of these impairments meet or equal one of the listed impairments found in Appendix I of 20 C.F.R. § 404.1599; if an impairment meets or equals a listed impairment then the claimant is deemed "disabled," if not, step four asks whether the claimant retains the Residual Functional Capacity ("RFC") to do his or her past relevant work; and finally at step five, if the claimant is unable to do prior relevant work, we ask whether the claimant is able to do any job available in significant numbers in the national economy. *Id.*

In this case, the ALJ dutifully followed this sequential evaluation, concluding the inquiry at step four by finding that Macaulay retains the RFC to do her prior job as a furniture assembler. (AR 18).

At step one, the ALJ found that Macaulay has not engaged in any substantial gainful activity since January 1, 2004, the alleged onset date of disability. At step two he found that Macaulay was diagnosed with chronic low back pain due to spondylolisthesis at L5–SI secondary to an L5 spondylolytic defect, as well as disc degeneration between L5–S1 and L4–5. He also found that her back pain has had more than a minimal effect on her ability to work, and is therefore "severe." (AR 13). The ALJ also found that Macaulay's depression and anxiety are not severe impairments since they pose no limitations to her ability to perform work related activities. *Id.* The ALJ made no determination as to whether Macaulay's obesity, either alone or in combination with other impairments, constitutes a "severe impairment." At step three, the ALJ found that none of Macaulay's impairments meet or equal a Listed Impairment. (AR 14). Finally, the ALJ made a finding as to Macaulay's RFC and, based on Macaulay's testimony, determined that she is "not disabled" because she retains the ability to return to her job as a furniture assembler. (AR 14–18).

In this action, Macaulay claims that the ALJ erred on four separate grounds, arguing that (1) the evidence does not support the ALJ's finding that Macaulay's testimony regarding her subjective pain and associated limitations was not entirely credible; (2) the ALJ's determination that Macaulay retains the functional capacity to work as a furniture assembler is not supported by the record; (3) the ALJ failed to hear testimony from a vocational expert;[7] and (4) the ALJ committed reversible error by failing to make any specific findings with regard to Macaulay's obesity. (Doc. 11 at 10–15).

---

6. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

7. Macaulay now concedes that the ALJ was under no legal obligation to hear testimony from a vocational expert at "stage four," her only point being that his analysis should have proceeded to stage five, at which point a vocational expert should have testified. (Doc. 18 at 7). But this is obviously different than arguing, as she initially did, that the ALJ's conclusions at step four were in error because no vocational expert was called.

## I. Macaulay's Obesity

Macaulay argues that the ALJ committed reversible error by not making any specific findings with regard to her obesity at any stage of the sequential evaluation. In particular, Macaulay draws the Court's attention to Social Security Ruling (SSR) 02–1p, *Titles II and XVI: Evaluation of Obesity* (September 12, 2002), and argues that it requires consideration of a claimant's obesity at every step of the disability analysis. (Doc. 18 at 9). Since the ALJ made no specific findings with regard to her obesity as part of his evaluation, Macaulay believes that the ALJ's analysis is clearly inadequate under this directive. (AR 12–19).

The Commissioner's response to this claim can be distilled into three separate arguments: (1) Macaulay failed to adequately raise obesity as a disabling impairment at the administrative level, and is now precluded from raising it here; (2) Macaulay's reliance on SSR 02–1p is misplaced because SSR 02–1p "states that only after the Commissioner has identified obesity as an impairment will he consider any functional limitations resulting from that impairment"; and (3) in any event, Macaulay simply has not, and does not now, allege any additional functional limitations caused by her obesity that are independent of the limitations related to her back pain and already considered by the ALJ. (Doc. 15 at 18).

The Court finds that the ALJ did not properly consider Macaulay's obesity as required by SSR 02–1p, that remand is warranted, and that the Commissioner's arguments to the contrary are unpersuasive.

First, the Court cannot seriously entertain the view that the ALJ is excused from giving Macaulay's obesity its due consideration because she did not timely raise it as an impairment. Not only is the record replete with references to Macaulay's obesity, but Macaulay's counsel submitted a letter to the ALJ five days prior to the hearing indicating that, "Ms. Macaulay suffers from non-displaced spondylosis, *obesity*, depression and other impairments that would impact her ability to do work-related activities, making them 'severe.' " (AR 163) (emphasis added). The ALJ made specific findings with regard to

her alleged back pain and depression, but not her obesity. (AR 13). Moreover, Disability Determination and Transmittal forms prepared by the SSA in March 2006 indicate obesity as a secondary diagnosis. (AR at 27, 28). Finally, it is not as though the ALJ completely overlooked these assertions of Macaulay's obesity, since he made numerous references to the condition in his written opinion, and made modest inquiries with regard to her obesity during the administrative hearing. (AR at 14, 15, 390). Especially given the nonadversarial nature of hearings for disability benefits, along with the ALJ's general and affirmative obligation to develop the administrative record, *see Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir.2008) (quoting *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999)), the Court finds that Macaulay adequately raised her obesity as an impairment that should have been properly considered by the ALJ. The Court turns next to the ALJ's consideration of obesity in his written decision.

As stated above, the ALJ did not make any specific findings as to whether Macaulay is obese and, if so, whether her obesity is "severe" within the meaning of 20 C.F.R. § 404.1520(a)(4)(ii). Nor did he consider whether Macaulay's back pain meets or equals a Listed Impairment when viewed in combination with her obesity, or how her residual functional capacity, already limited to a certain extent by her back impairments, may be further reduced by her obesity. (AR 12–19). This approach is clearly contrary to the law as stated in SSR 02–1p which, like all other Social Security Rulings, is binding on the agency. 20 C.F.R. § 402.35(b)(1).

SSR 02–1p requires consideration of obesity throughout the sequential evaluation, not just when the RFC determination is made. At step two, the Ruling requires adjudicators to consider whether the claimant has the medically determinable impairment "obesity," and, if so, whether it alone or in combination with other impairments is "severe." SSR 02–1p; *Boston v. Barnhart*, 332 F.Supp.2d 879, 885–886 (D.Md.2004). Thus even if the Commissioner is correct that functional limitations associated with obesity need not be considered unless the ALJ finds

obesity to be an impairment (Doc. 15 at 18), this does not excuse the ALJ from determining whether a claimant's obesity is an impairment in the first place.

Here, the record evidence overwhelmingly suggests that Macaulay is obese. In "the absence of evidence to the contrary in the case record, [the agency] will accept a diagnosis of obesity given by a treating source or by a consultive examiner." SSR 02–1p. In Macaulay's case, all of her treating physicians diagnosed her obesity, and in February 2006 the agency itself recognized that she is "obese with BMI 43," placing her within the category of "extreme obesity" as defined by SSR 02–1p.[8] (AR 249); SSR 02–1p. Accordingly, the ALJ should have made a specific finding with regard to this impairment, and further should have found whether Macaulay's obesity, either alone or in combination with her chronic back pain, rises to the level of "severe." Id. ("we will find that obesity is a 'severe' impairment when, alone or in combination with another medically determinable . . . impairment(s), it significantly limits an individual's . . . ability to do basic work activities"); Willoughby v. Commissioner of Social Security, 332 F.Supp.2d 542, 549 (W.D.N.Y.2004); Shoate v. Barnhart, 2003 WL 21556939, at *4 (N.D.Cal. July 3, 2003) (remanding case where the ALJ did not consider the evidence of plaintiff's obesity in determining whether plaintiff suffered from a severe impairment or combination of impairments).

At step three, "[o]besity may be a factor in both 'meets' and 'equals' [listing] determinations." SSR 02–1p. For example, "obesity may increase the severity of coexisting or related impairments to the extent that the combination of the impairments meets the requirements of a listing. This is especially true of musculoskeletal . . . impairments." Id.; see, e.g., Segal v. Barnhart, 342 F.Supp.2d 338, 342 (E.D.Pa.2005) (finding

that ALJ's failure "to consider the impact of obesity in combination with other impairments when determining . . . whether they equal a listing results in an error of law.")

Finally, consideration of obesity's effects on a claimant's residual functional capacity is essential to the analysis at steps four and five of the sequential evaluation. SSR 02–1p. This is true even if the claimant's obesity is not "severe." 20 C.F.R. § 404.1545 ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' "); Dixon v. Shalala, 54 F.3d 1019, 1031 (2d. Cir.1995). As SSR 02–1p explains, "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone." SSR 02–1p; see also Hogan v. Astrue, 491 F.Supp.2d 347, 355 (W.D.N.Y.2007) ("The Commissioner's Rulings recognize that plaintiff's obesity could affect her exertional limitations and must be considered at steps four and five of the evaluation process."). Similarly here, Macaulay's spondylolisthesis and disc degeneration in her back may result in greater pain and limitation than normal because she is also obese.[9] Regardless, the ALJ made no such findings one way or the other.

Plainly, the ALJ committed legal error by completely ignoring SSR 02–1p, and not properly considering the effects of Macaulay's obesity at any stage of his analysis. Nonetheless, the Commissioner argues that Macaulay is not entitled to relief, and remand of this matter would be of no utility, because the "record evidence in this case does not demonstrate a significant limitation caused by Macaulay's obesity." (Doc. 15 at 18); see, e.g., Forte v. Barnhart, 377 F.3d 892, 896–897 (8th Cir.2004).

---

8. "Extreme," or "Level III" obesity includes Body Mass Indexes (BMIs) of 40 or greater, and is the most severe category of obesity recognized by the Social Security Administration. The SSA explains that extreme obesity carries the greatest risk for developing obesity related impairments, but does not necessarily correlate with any specific degree of functional loss. SSR 02–1p.

9. As discussed above, there is certainly evidence in the medical record supporting the proposition that Macaulay's back impairment is aggravated by her obesity. The agency recognized this fact in February 2006, and the ALJ noted that "some of the claimant's back pain has been attributed to her obesity." (AR 14, 249).

The Commissioner apparently does not dispute the general proposition that a claimant's obesity must be considered in combination with other impairments to determine the extent of the functional limitations caused by obesity.[10] Rather, his point is that the need to make particular findings with regard to obesity is obviated because Macaulay alleges limitations caused by obesity only to the extent that her back pain is exacerbated. Put differently, Macaulay's obesity was effectively factored into the ALJ's RFC determination because he fully considered all of the limitations imposed by her back pain, regardless of what the underlying causes of that pain may be.

This position is not without legal support. *See, e.g., Presswood v. Astrue,* 2008 WL 740364, at *5 (N.D.Ind. March 14, 2008) (Although "the ALJ only 'briefly' noted her obesity when he stated that it was one of two severe impairments, [the claimant] has provided no argument to address how her obesity affects her ability to work other than to suggest that it generally exacerbates her impairments."); *Guadalupe v. Barnhart,* 2005 WL 2033380, at *6 (S.D.N.Y. Aug.24, 2005) ("When an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the Plaintiff, the claimant's obesity is understood to have been factored into their decisions."). After all, the "mere presence of a disease or impairment alone ... is insufficient to establish disability; instead, it is the impact of the disease, and in particular any limitations which it may impose upon the ability to perform basic work functions, that is pivotal to the disability inquiry." *Martin v. Commissioner of Social Security,* 2008 WL 4793717, at *13 (N.D.N.Y. October 30, 2008) (citing *Rivera v. Harris,* 623 F.2d 212, 215–216 (2d Cir.1980); *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y.1995)).

Assuming the Commissioner's characterization of the evidence to be accurate,[11] this argument would be more persuasive in slightly different circumstances. However, this is not a case in which the ALJ took notice of the claimant's obesity as an impairment (severe or otherwise) such that it would be reasonable to assume that obesity was adequately factored into his decision at later stages of the inquiry. *See, e.g., Herod v. Astrue,* 2008 WL 3155161, at *9 (W.D.N.Y. August 4, 2008) (finding that because, among other things, the ALJ found obesity to be a severe impairment, "it is evident that plaintiff's obesity was factored into [the ALJ's] RFC determination."); *Cruz v. Barnhart,* 2006 WL 1228581, at *9 (S.D.N.Y. May 8, 2006).

Nor is this even a case in which the ALJ completely failed to mention the claimant's obesity, but nonetheless considered all of the claimant's alleged limitations. *See, e.g., Ingram v. Astrue,* 2008 WL 2943287, at *6 (M.D.Fla. July 30, 2008); *Forte v. Barnhart,* 377 F.3d 892, 896–897 (8th Cir.2004).

Instead, here the ALJ appears to rely on Macaulay's obesity at several points in his written decision, but does so in a way that is contrary to law and may have unfairly prejudiced Macaulay's claims. For example, after summarizing Macaulay's testimony regarding her pain, the ALJ comments that,

> Given this testimony, it is reasonable to expect that the objective medical evidence of record would pinpoint an underlying medically determinable impairment which one would reasonably expect to result in severe levels of pain. While it is clear from the records that the claimant was diagnosed with back pain due to spondylolisthesis ... as well as disc degeneration ..., some of the claimant's back pain has been attributed to her obesity.

(AR 14). A fair reading of this excerpt is that, unlike her back pain, the ALJ simply

---

10. To whatever extent this is his point he is mistaken. *See* SSR 02–1p; 42 U.S.C. § 423(d)(2)(B); *Shellhouse v. Barnhart,* 395 F.Supp.2d 1136 (N.D.Ala.2005) (finding legal error because "[n]owhere is the effect of the Plaintiff's obesity analyzed in combination with his other impairments.").

11. In addition to causing further back pain, Macaulay testified that her obesity can cause shortness of breath. (AR 374). However, she did not elaborate as to how this symptom limits her vocational functionality, and Dr. Borie once noted that while exertion may result in shortness of breath, "with walking she is fine." (AR 291).

did not recognize obesity as a "medically determinable impairment" that could corroborate Macaulay's subjective complaints of pain. This interpretation is supported by the ALJ's later summary of Macaulay's medical conditions, in which obesity is not even mentioned. (AR 16). As explained at length above, this view is plainly contrary to law. *See* SSR 02–1p ("we consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability.").

If anything, the effect of Macaulay's obesity on her back pain renders her back impairments more serious, not less. This is particularly true since her obesity makes back surgery a less viable option. (AR 15, 260); SSR 02–1p; *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir.2004) ("The fact that [the claimant's] arthritis is exacerbated by her obesity does not make the arthritis a less serious condition, but on the contrary a more serious one."). But the ALJ provides no indication that he considered her obesity as supporting her disability claim. Quite to the contrary, he made several observations which, when read in light of the entire opinion, suggest that he viewed Macaulay's back problems as more remedial-and therefore less appropriate as grounds for disability-because they are partly attributable to her obesity.[12]

For example, the ALJ noted that "if the claimant could reduce her body weight with or without surgical intervention, it would certainly help her back pain and she may not require surgery." (AR 15). He further observed that Macaulay "was walking only three days per week and [Dr. Borie] strongly recommended that she walk daily." *Id.* To the extent that the ALJ "may have been hinting that [Macaulay] should lose weight, that obesity is like refusing to wear glasses or a hearing aid-essentially a self-inflicted disability that does not entitle one to benefits or boost one's entitlement by aggravating another medical condition," he is wrong, and the matter should be remanded for proper consideration.[13] *Id.* at 1068; *see also Stone v. Harris*, 657 F.2d 210, 212 (8th Cir.1981) (explaining that the agency is not entitled to presume that obesity is remedial).

In sum, the ALJ committed legal error by not considering Macaulay's obesity in accordance with SSR 02–1p.[14] While such error may be harmless in certain cases, the danger that the ALJ in this case did not merely ignore her obesity, but rather affirmatively factored it against her, is too great to assume that Macaulay was not unfairly prejudiced. Other courts have remanded even for a mere failure to consider obesity, *see, e.g., Hogan*, 491 F.Supp.2d at 355; *Boston*, 332 F.Supp.2d at 885–886, and the Court finds a "sentence four" remand to be appropriate in this case. 42 U.S.C. § 405(g).[15]

12. It is certainly true that if Macaulay's obesity itself is remedial, such that she would lose significant weight if she would just exercise more or eat healthier foods, then it could not serve as the basis for a finding of disability any more than other remedial conditions. *See, e.g., Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993). But here the ALJ made no such finding. Moreover, the Court also cautions that SSR 02–1p makes clear that obesity is rarely remedial in any meaningful way, especially in cases of "extreme" obesity for which surgery is generally the only option. Finally, "[b]ecause of the risks and potential side effects of surgery for obesity, [the SSA] will not find that an individual has failed to follow prescribed treatment for obesity when prescribed treatment is surgery." SSR 02–1p; *see also* SSR 82–59, *Failure to Follow Prescribed Treatment* (November 30, 1981).

13. Of note, the ALJ's consideration of the claimant's arthritis in relation to her obesity in *Barrett* is similar to the comments made by the ALJ about Macaulay's back pain and obesity in this

case. There, the ALJ observed that the claimant's arthritis was "not so significant as to warrant surgery and is mainly exacerbated by her weight." *Barrett*, 355 F.3d at 1066.

14. Even in the case most heavily relied on by the Commissioner, *Ingram v. Astrue*, 2008 WL 2943287 (M.D.Fla. July 30, 2008), the Court noted that "it clearly would have been better for the ALJ to specifically address Plaintiff's weight." *Id.* at *6.

15. Under sentence four of 42 U.S.C. § 405(g), the district court has the authority to reverse, modify, or affirm the decision of the Commissioner. This may include a remand of the case back to the Commissioner for further analysis and a new decision. A sentence four remand is a final judgment. *See Melkonyan v. Sullivan*, 501 U.S. 89, 97–102, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991); Fed.R.Civ.P. 58.

## II. Other Problems

Because the case is remanded for further administrative proceedings, the Court notes two additional problems with the ALJ's decision that should be remedied.

First, Macaulay complains that the ALJ's RFC determination was flawed, in part, because he failed to give "controlling weight" to the medical source statement of Macaulay's primary physician, Dr. Borie. (Doc. 9–2 at 11). The difficulty here is that regardless of whether the ALJ *should* have given Dr. Borie's opinion controlling weight, it is simply not clear from the written decision whether he did or not. Accordingly, the Court directs that on remand all reasons in support of a residual functional capacity evaluation, including whether or not the adjudicator adopts the opinion of a treating physician, be stated fully, clearly, and cogently.

In accordance with the relevant regulations, the Second Circuit recognizes the "Treating Physician" rule, which governs the weight to be accorded the medical opinion of the physician who treated the plaintiff. This rule provides that the "treating physician's opinion on the subject of medical disability, [including the] nature and degree of impairment, is: (i) binding on the fact-finder unless contradicted by substantial evidence; and (ii) entitled to some extra weight because the treating physician is usually more familiar with a claimant's medical condition than are other physicians." *Schisler v. Heckler*, 787 F.2d 76, 81 (2d Cir.1986); SSR 96–2p, *Titles II and XVI: Giving Controlling Weight to Medical Source Opinions* (July 2, 1996). Similarly, 20 C.F.R. § 404.1527(d)(2) states that "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques ... we will give it controlling weight." Treating sources are "physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

In this case, the ALJ stated that, in reaching conclusions regarding residual functional capacity, "the undersigned adopts the medical opinion of the [*sic* ] Kenneth Borie, the claimant's treating physician regarding the claimant's abilities doe to [*sic* ] work-related activities ... [Dr. Borie's opinion] is well supported by medically acceptable clinical and laboratory diagnostic techniques ... [and is] entitled to controlling weight." (AR 17).

One problem is that the ALJ's conclusions are stated inconsistently throughout the decision, and do not once accurately state the opinion of Dr. Borie as expressed in his June 14, 2007 Medical Source Statement. (AR 296–305). For example, at one point the ALJ "finds that the claimant is able to lift and carry at least 20 pounds occasionally and 10 pounds frequently, sit for up to six hours in an eight hour work day and stand and/or walk for up to six hours in a workday." (AR 17). However in the "findings" listed on the last page of his decision the ALJ finds that, "[t]he claimant has the residual functional capacity to lift and carry at least 20 pounds occasionally and 10 pounds frequently, sit for up to *five* hours in an eight-hour workday and stand for up to *five* hours in an eight-hour workday and walk for up to three hours in an eight-hour workday." (AR 18) (emphasis added). Thus the ALJ is inconsistent with regard to how long Macaulay is able to sit and stand in the course of one eight-hour workday.

Moreover, both of the above recitations misstate Dr. Borie's medical source statement, which notes that Macaulay is able to lift or carry up to 10 pounds only "occasionally," and not "frequently" as stated by the ALJ. (AR 299). And at another point the ALJ characterizes Dr. Borie's opinion as nonsensically stating that Macaulay is able to "lift and carry up to 20 pounds occasionally and 20 pounds frequently." (AR 17). Though the internal inconsistency in this passage suggests the possibility of a mere typo, its part as one of myriad inaccuracies on this issue cannot be ignored.

Finally, since the extent to which Dr. Borie's medical source statement represents his

own considered opinion is unclear, *see* n.4, *supra,* the ALJ's conclusory finding that it is "well supported by medically acceptable clinical and laboratory diagnostic techniques" (AR 17) is somewhat peculiar.[16] This is especially true in light of the ALJ's own observations at Macaulay's hearing, during which he expressed concern that Dr. Borie's "opinions" may be nothing more than Macaulay's own characterization of her medical problems. Referring to Dr. Borie's medical source statement he added, "it is difficult to put together the opinion of a physician as to what someone is able to lift when a form is reflecting a question to a patient, and the patient says, I can only lift five pounds, and the doctor puts five pounds in the box as to the limit in terms of lifting capability." (AR 393). This is not to say that a future adjudicator is necessarily precluded from giving Dr. Borie's medical source statement controlling weight.[17] But the ALJ below should have provided further explanation in light of his own skepticism and the ways in which his ultimate findings diverged from Dr. Borie's opinion.

Accordingly, the ALJ's findings with regard to Macaulay's RFC are flawed at least because they are stated inconsistently, and because the weight accorded Dr. Borie's medical source statement is unclear. Further, the ALJ should have provided the rationale explaining the probative value of Dr. Borie's opinion, regardless of whether it is entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination for the weight we give your treating source's opinion.").

Second, even assuming that there is substantial evidence for the ALJ's RFC determination, the RFC assessment made below does not permit a finding that Macaulay is able to return to her prior work as a furniture assembler. The ALJ reached this con-

clusion based on Macaulay's own description of her previous job (AR 18), according to which she was required to stand for the entire eight hour work day, and walk for two of those eight hours. (AR 128). Based on the ALJ's finding that she is able to stand for a total of only five hours and walk for three hours in an eight hour work day, Macaulay clearly cannot perform the physical requirements of her past work. In his written decision, the ALJ completely ignored the requirement that Macaulay stand for the entire day, observing only that the "claimant's past relevant work, as described by her, involved lifting less than 10 pounds and walking no more than two hours in an eight hour work day." (AR 18).

In his motion, the Commissioner appears to believe that Macaulay is able to stand for five hours, and then walk for an *additional* three hours, thus giving her the ability to remain on her feet for a full work day. (Doc. 15 at 14). This conclusion is counter-intuitive to say the least, and absent more specific findings the Court declines to draw it here. Further, even if true it fails to explain how Macaulay would be able to stand (still) for six hours in a day, which her prior work apparently required her to do.

The Court makes no specific findings with regard to Macaulay's RFC-that must be done following a rehearing with her obesity given proper consideration-but the Court concludes that, based on his own RFC evaluation, the ALJ erred in finding that Macaulay could return to her prior work as a furniture assembler. The ALJ should have proceeded to stage 5 to determine whether Macaulay retains the residual functional capacity to perform work available in significant numbers in the national economy.

### CONCLUSION

The evaluation of this case at the administrative level was flawed at the outset by the

16. Even Macaulay concedes that if "Dr. Borie had indicated that his opinions in the Medical Source Statement were based solely on plaintiff's responses, there may have been some validity to defendant's position" that the statement is not entitled to controlling weight. (Doc. 18 at 6). But on its face it is ambiguous as to whether his statement is anything more than Macaulay's responses.

17. Indeed, at oral argument the Commissioner took the position that Dr. Borie's medical source statement likely represents both Dr. Borie's medical opinion as well as Macaulay's subjective responses.

ALJ's failure to properly consider the plaintiff's obesity in accordance with the law, and a re-analysis of the sequential evaluation from step-two forward is now required. The Court appreciates the Commissioner's contention that remand is unwarranted because no additional obesity-related limitations were alleged, but the various indications that Macaulay's obesity was affirmatively factored against her suggest that even the ALJ's back impairment analysis may have been contaminated by his contagion of legal error.

Accordingly, Macaulay's Motion for Summary Judgment (Doc. 9) is GRANTED and the Commissioner's Motion for an Order Affirming the SSA (Doc. 15) is DENIED. The Court orders this matter remanded to the Social Security Administration for a rehearing and a new decision by a different administrative law judge in accordance with this Opinion.