# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 03-1063

LINDA P. BARRETT,

*Plaintiff-Appellant,*

*v.*

JO ANNE B. BARNHART,
Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 02-C-303-S—**John C. Shabaz**, *Judge.*

ARGUED NOVEMBER 13, 2003—DECIDED JANUARY 22, 2004

Before POSNER, RIPPLE, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* Linda Barrett appeals from the district court's affirmance of the denial by an administrative law judge of her application for social security disability benefits. Barrett, who was 39 years old at the time of her hearing before the administrative law judge and has a high school education, is extremely obese, weighing more than 300 pounds even though she is only 5 feet 1 inch tall. She also has a severe hearing loss in both ears, osteoarthritis in both knees, and numbness and pain in an arm and hand that may be due to carpal tunnel syndrome,

although the administrative law judge did not think this
a severe impairment; for that matter, he dismissed the
significance of Barrett's arthritic knees on the ground that
her arthritis was "not so significant as to warrant sur-
gery and is mainly exacerbated by her weight." He rejected
a report by a physical therapist who had examined Barrett
and had concluded that she was incapable of full-time work;
the administrative law judge thought that Barrett had
exaggerated her condition to the therapist. He determined
that although Barrett cannot return to her previous work,
which was straightening the tails of mink pelts on a mink
ranch—apparently a strenuous job—she can do a wide
range of other "light" work (not to be confused with
sedentary work, see 20 C.F.R. §§ 404.1567(a), (b)), includ-
ing factory work, provided she doesn't have to stand for
more than two hours at a time or sit for more than six
hours at a time or lift more than 20 pounds frequently.
The two-hour limitation on consecutive standing that
the administrative law judge imposed was not based, di-
rectly anyway, on medical evidence. The only physician
who specified limitations had advised that Barrett could
stand for up to six hours at a time, but he had not known
about the problem with her knees.

A vocational expert, whose function in a social security
disability hearing is to determine which jobs the appli-
cant for disability benefits can do and how many such jobs
exist in the applicant's state, 20 C.F.R. §§ 404.1566(b), (e);
*Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002);
*Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2001);
*Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (per
curiam), opined that there are 24,500 jobs in Wisconsin
that a person can do who is subject to the restrictions on
standing, sitting, and lifting that the administrative law
judge had specified. Of course as a practical matter Barrett
is unemployable, but that is not the test for entitlement

to social security benefits; the test is whether she is so disabled that there are no jobs in reasonable proximity to where she lives that she is physically able to do.

A vocational expert can testify to the number of light jobs in Wisconsin, since "light" work is a defined term. But here he was asked to determine the number of jobs in a subclass of light work, namely the jobs that don't require standing for more than two hours at a stretch, or normal hearing. For him to offer the number 24,500 with no indication of how he adjusted the numbers in the dictionary to reflect Barrett's diminished capacity leaves us in the dark about the actual basis of his testimony, as in *Ragsdale v. Shalala*, 53 F.3d 816, 821 (7th Cir. 1995). However, because Barrett's lawyer did not question the basis for the vocational expert's testimony, purely conclusional though that testimony was, any objection to it is forfeited. *Donahue v. Barnhart, supra*, 279 F.3d at 446; compare *Morrison v. Apfel*, 146 F.3d 625, 628-29 (8th Cir. 1998). But the validity of the testimony still depends on whether the administrative law judge accurately described Barrett's condition to him; for the testimony was perfunctory and "nothing in the record reflects that [he] independently knew of all the limitations related to" Barrett's condition. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002); compare *Ehrhart v. Secretary of Health & Human Services*, 969 F.2d 534, 540 (7th Cir. 1992); *Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 777 (10th Cir. 1990). The administrative law judge's analysis of Barrett's condition was so flawed that the case must be returned to the Social Security Administration for a fresh analysis of the evidence.

First, to give no weight at all to the physical therapist's report because Barrett had exaggerated her condition to the therapist (and we accept the administrative law judge's finding on that score, a well-nigh unreviewable determina-

tion of credibility) was arbitrary, since the therapist based her evaluation on physical tests and observation, not just on what Barrett told her. Although Barrett is wrong to argue that a physical therapist's report should be given controlling weight, such reports are entitled to consideration. *Lauer v. Apfel*, 169 F.3d 489, 494 (7th Cir. 1999); *Frankl v. Shalala*, 47 F.3d 935, 939 (8th Cir. 1995); see also *Rankin v. Apfel*, 195 F.3d 427, 429-30 (8th Cir. 1999); *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). Orthopedists tend to be consulted for acute conditions, often requiring surgery or other aggressive intervention; physical therapists tend to be consulted for chronic problems, where the problem of obtaining relief that will enable a person to work is urgent and a focus of attention. If a person breaks a leg, he knows that he can return to work when the break mends. But if he has a chronic condition like arthritis or obesity ("chronic" implying not fully responsive to medical treatment), the question of ability to work becomes foremost and it is a question concerning which physical therapists have significant expertise.

Then there is the administrative law judge's handling of Barrett's arthritis. The fact that her arthritis is exacerbated by her obesity does not make the arthritis a less serious condition, but on the contrary a more serious one. But by treating obesity as an aggravating factor, the administrative law judge may have been hinting that Barrett should lose weight, that obesity is like refusing to wear glasses or a hearing aid—essentially a self-inflicted disability that does not entitle one to benefits or boost one's entitlement by aggravating another medical condition. E.g., 20 C.F.R. §§ 404.1530(a), (b); *Shramek v. Apfel*, 226 F.3d 809, 812 (7th Cir. 2000); *Wilder v. Chater*, 64 F.3d 335, 336 (7th Cir. 1995); *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001). Barrett's obesity, however, is due not to gluttony

but to a medical condition, hypothyroidism, and although she takes medication for that condition it has not enabled her to lose weight. The applicable regulations of the Social Security Administration do not treat obesity as per se a self-imposed disability for which benefits cannot be awarded. Social Security Ruling (SSR), 67 Fed. Reg. 57859 (Sept. 12, 2002); *Celaya v. Halter*, 332 F.3d 1177, 1181 n. 1 (9th Cir. 2003). Granted, if an applicant's obesity is *in fact* remediable, then it is no more a basis for an award of benefits than any other remediable condition would be, *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). But as in *Dodrill*, and such other cases as *Brown v. Sullivan*, 902 F.2d 1292, 1296 (8th Cir. 1990); *McCall v. Bowen*, 846 F.2d 1317, 1319 (11th Cir. 1988), and *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987), Barrett's obesity has not been shown to be remediable.

Maybe the administrative law judge thought that since he had already ruled that Barrett's obesity was a severe impairment of her ability to work, though not totally disabling in itself (that is, not a "listed" impairment, in social security disability lingo), conditions caused or aggravated by obesity were irrelevant. That of course would be wrong. The problem is that we don't know what he thought. And in particular (this is the third serious flaw in his analysis) we do not know on what basis he decided that Barrett can stand for two hours at a time. No physician said that. A great many people who are not grossly obese and do not have arthritic knees find it distinctly uncomfortable to stand for two hours at a time. To suppose that Barrett could do so day after day on a factory floor borders on the fantastic, but in any event has no evidentiary basis that we can find.

And finally and all too characteristically, the administrative law judge failed to consider the applicant's med-

ical situation as a whole, as he is required to do. E.g., 20 C.F.R. § 404.1523; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (per curiam); *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000); *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000); *Johnson v. Sullivan*, 922 F.2d 346, 350-52 (7th Cir. 1991) (en banc); *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000). Even if Barrett's arthritis was not particularly serious in itself, it would interact with her obesity to make standing for two hours at a time more painful than it would be for a person who was either as obese as she or as arthritic as she but not both. Similarly, the numbness and pain in her arm may not be severe, but they are additive to the acute discomfort that she must experience in prolonged standing while all the time straining to hear, since factories are often noisy and hearing aids at best do not provide perfect correction for hearing problems and certainly not in a noisy environment. W. Andrew Dean & Meredith Davison, "Hearing Loss in Adults," *Clinician Reviews*, Aug. 15, 2002, www.medscape.com/viewarticle/ 439298_print (Dec. 5, 2003); "World of Silence: How Pharmacists Can Help the Deaf," *Chemist & Druggist*, Aug. 11, 2001, p. 21; Anil K. Alwani and James B. Snow, Jr., "Disorders of the Smell, Taste and Hearing: Treatment," in *Harrison's Principles of Internal Medicine* 186 (15th ed., Eugene Braunwald et al. eds. 2001).

The cumulative effect of the administrative law judge's errors and omissions was to fail to build a rational bridge from the evidence to the finding that Barrett was not totally disabled. E.g., *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (per curiam); *Steele v. Barnhart*, *supra*, 290 F.3d at 941; *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001); *Green v. Apfel*, *supra*, 204 F.3d at 781; *Fargnoli v. Massanari*, 247 F.3d 34, 41-42 (3d Cir. 2001); see generally *Pension Benefit Guaranty Corp. v. LTV Corp.*, 496 U.S. 633, 654 (1990); *Bill Branch Coal Corp. v. Sparks*, 213 F.3d

186, 191 (4th Cir. 2000). The matter must therefore be returned to the Social Security Administration for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*