**Paulette WEGNER, Plaintiff–Appellant,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant–Appellee.**

No. 03–3426.

United States Court of Appeals, Seventh Circuit.

Argued April 21, 2004.

Decided June 30, 2004.

Ellen C. Hanson, Morris, IL, for Plaintiff–Appellant.

Catherine A. Seagle, Malinda Hamann, Chicago, IL, for Defendant–Appellee.

Before Hon. JOHN L. COFFEY, Hon. DANIEL A. MANION, and Hon. MICHAEL S. KANNE, Circuit Judges.

## ORDER

In this social security case, Paulette Wegner claims that she is disabled by depression, social anxiety, and an excessive need for sleep. An administrative law judge agreed that her depression was a severe impairment and that she was unable to perform her previous work as a medical technician, but also found that some of her limitations were self-imposed, and that her remaining limitations were not altogether disabling. The ALJ therefore denied her claim for benefits, and the district court upheld the denial. Because we agree with the district court that substantial evidence supports the ALJ's conclusion, we affirm.

In the mid–1980s, while working as a medical technician for the University of Wisconsin (a position she had held since

graduating from college in 1973), Wegner began treatment with Dr. David Kasuboski, a psychiatrist. He diagnosed her as suffering from a dysthymic disorder, recurrent major depression, and a personality disorder which caused anxiety and feelings of suspiciousness. These symptoms were eventually aggravated by her work environment, where she felt unwelcome and under attack. She eventually decided to take a leave of absence after receiving a one-day suspension for insubordination.

Soon after that, Wegner applied for social security disability benefits and for disability benefits as a state employee. (She was granted and continues to receive the state benefits.) The Social Security Administration's consulting physicians reviewed her medical records and concluded that although she had significant long-standing problems, she was nevertheless capable of routine, low-stress work. Another consulting psychiatrist, in connection with the state-benefit proceedings, opined that Wegner would function better in a "non-people oriented" job, and recommended vocational rehabilitation.

Dr. Kasuboski also provided an evaluation, in which he described various psychological and psycho-somatic problems—including social anxiety, compulsive behavior, premenstrual syndrome, and hypersomnia (excessive sleeping, allegedly up to fifteen hours a day)—that made it impossible for Wegner to work, "at least in her current job." Near the end of the report, Kasuboski stated that Wegner was unwilling to consider other jobs that might be more manageable for her:

> In recent weeks, the patient has informed me that she in no way will return to her current employment under any conditions. She rejects the idea that anyone would ask her to take her few functional hours in the day and do employment. Also rejected was the idea that she should be asked to obtain a job with minimal supervision.... Also rejected is that I or any other doctor could possibly predict her performance in any job or her ability to function in such a job. She has no interest in experimenting in any more job trial [sic] or changes. She does not understand the pertinence of questioning what she will do to try to rehabilitate and improve other than just not formally work.

Kasuboski expressed concern that Wegner's refusal to consider other employment had become entrenched; he described her as "neither willing nor capable of performing [satisfactorily] in her current job nor at any other job at this time." He also doubted that further psychiatric intervention would be of any use: "I cannot predict that she will change with regard to employability."

Wegner soon became dissatisfied with Kasuboski and sought treatment from a different psychiatrist, Dr. Charles Denby. Denby's intake notes describe Wegner as "shopping for a new doctor after her psychiatrist of eight years declined to support her decision to pursue disability status." Denby was struck, however, by what he described (with emphasis) as Wegner's "obvious *paranoid personality*"—a condition also noted by Dr. John Gerasch, a psychiatrist from whom Denby requested an evaluation.

Denby also sought an evaluation from Dr. Mary Klink, a sleep-disorder specialist. Klink advised Denby that Wegner's excessive need for sleep was probably related to her depression rather than caused by an independent disorder:

> My clinical experience has been that it is not uncommon for patients with chronic depression problems to develop a pattern of excessive sleeping, sleep craving, and fatigue. This is generally different from my patients with hypersomnolence.

Ms. Wegner really presents as a story of fatigue rather than overt hypersomnolence.

Dr. Klink also suggested to Denby that stimulant medication might help combat any disabling effects of Wegner's depression-induced fatigue.

The remaining medical evidence is more or less cumulative, confirming that Wegner suffers from serious depression, social anxiety, and a paranoiac personality disorder, and that she continues to feel fatigued and to sleep excessively.

Wegner's claim for benefits was initially denied in March 1996. She challenged that decision before the district court, which concluded that the ALJ had insufficiently articulated his reasoning and had impermissibly relied on personal observation. The case was remanded for another hearing before a different ALJ. This time, the ALJ credited many of Wegner's factual allegations. He found that her impairments were severe and that they made it impossible for her to do her prior work as medical technician. But he also found that her condition was not so severe as to meet the "listing" for either "affective disorders" or "personality disorders," and that there were many other jobs she could perform in the regional and national economies. The ALJ based this last finding on a vocational expert's response to a hypothetical scenario incorporating many of Wegner's alleged constraints, including her fatigue, but not her declared need to sleep for up to fifteen hours a day. The expert declared there were 50,000 jobs in the regional and national economies that such a person could perform, including "25,000 light and sedentary jobs in manufacturing/assembly, 16,000 in general office/clerical, 9,000 in hand packaging, and 2,400 in food preparation." The ALJ therefore denied Wegner's claim for benefits.

Wegner again challenged the decision in district court. This time, however, the magistrate judge who reviewed the case concluded, in a careful 54–page Report and Recommendation, that the evidence reasonably supported the ALJ's finding of no disability. The district court judge adopted the magistrate judge's recommendation and affirmed the denial of benefits.

■ On appeal, Wegner makes three arguments. Initially, she argues that the ALJ failed to give controlling weight to the opinions of her treating physicians, particularly Dr. Kasuboski. "A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir.2003) (per curiam); *see* 20 C.F.R. § 404.1527(d)(2). In fact, the ALJ *did* credit Kasuboski's opinion that Wegner was depressed and anxious, and on that basis found that she was severely impaired. But the ALJ also credited Kasuboski's statement that Wegner had vigorously resisted the idea of attempting to find other work or to rehabilitate herself— a statement that supported the ALJ's conclusion that Wegner was not so much unable as unwilling to work. We believe that the ALJ's interpretation and weighing of this evidence was reasonable, and we will not undertake to reweigh it ourselves. *See Clifford v. Apfel,* 227 F.3d 863, 869 (7th Cir.2000) (appeals court does not reweigh or resolve conflicts in the evidence).

■ Wegner's second argument involves a similar disagreement with the ALJ's weighing of the evidence. She claims that the hypothetical question posed by the ALJ to the vocational expert was not representative of her actual limitations. The validity of a vocational expert's testimony "depends on whether the admin-

istrative law judge accurately described [the claimant's] condition to him," *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004). Wegner argues that the ALJ's description of her condition was inaccurate because it did not account for her hypersomnia. The ALJ had concluded, however, that her hypersomnia was not a genuine limitation, but instead was part of "a pattern that is comfortable for her and [which she] does not put forth effort to change." This conclusion is supported by Dr. Klink's finding that Wegner's need for sleep was not caused by any underlying physical disorder, but instead was a potentially remediable side-effect of Wegner's chronic depression. *Cf. Barrett*, 355 F.3d at 1068 (remediable conditions do not warrant disability benefits).

■ Finally, Wegner claims that the ALJ improperly found that she did not meet the listing for affective disorders, 20 C.F.R. § 404, Subpt. P, App. 1, 12.04, or the listing for personality disorders, 20 C.F.R. § 404, Subpt. P, App. 1, 12.08. The ALJ found that Wegner met the symptomological "diagnostic A criteria" for each listing, such as fatigue, diminished concentration, seclusiveness, and pathological suspiciousness, but that the limiting effects of those symptoms were not severe enough to qualify under each listing's "diagnostic B criteria." Wegner's argument against this conclusion is based entirely on her disagreement with the ALJ about the severity of her symptoms, and this court is not in a position to reweigh the evidence of that severity. *See Clifford*, 227 F.3d at 869.

As the magistrate judge observed, the ALJ's interpretation of the evidence was not the only one possible, but there is substantial evidence in the record to support the conclusion that Wegner is not disabled. *See Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir.2003) ("We will uphold the Commissioner's decision if it is supported by substantial evidence and is free of legal error."). We therefore AFFIRM the denial of benefits.