In the

# United States Court of Appeals

## For the Seventh Circuit

―――――――――――

No. 13-2120

MICHAEL E. GARCIA,

*Plaintiff-Appellant*,

*v.*

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

*Defendant-Appellee*.

―――――――――――

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:12-cv-00027-APR — **Andrew P. Rodovich**, *Magistrate Judge*.

―――――――――――

ARGUED NOVEMBER 19, 2013 — DECIDED DECEMBER 20, 2013

―――――――――――

Before POSNER, SYKES, and HAMILTON, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiff applied for social se-
curity disability benefits in 2010, when he was 40 years old.
He claimed to be disabled from full-time employment be-
cause of abdominal pain caused by cirrhosis of the liver, se-
vere thrombocytopenia (low platelet count), hepatitis C, and
an umbilical hernia—ailments that had been diagnosed by
several physicians that year. All of his ailments had been ei-

ther caused or exacerbated by alcoholism. But he stopped
drinking in 2010 and so far as appears his alcoholism is no
longer a "contributing factor" barring him from obtaining
disability benefits. 42 U.S.C. § 423(d)(2)(C); *Parra v. Astrue*,
481 F.3d 742, 746–47 (9th Cir. 2007); *Fastner v. Barnhart*, 324
F.3d 981, 984 (8th Cir. 2003). An administrative law judge
ruled that Garcia is capable of doing sedentary work (albeit
with some limitations on the type of sedentary work that he
is able to do) and so is not disabled. Garcia sued to set aside
the denial of his claim, lost in the district court, and appeals.

Two doctors who examined Garcia, one of them appoint-
ed by Indiana's disability agency, which works with the So-
cial Security Administration, agreed that he can't engage in
substantial gainful activity. If that's correct, he's disabled.
The agency doctor noted that Garcia's cirrhosis made him a
candidate for a liver transplant. See Mayo Clinic, "Cirrhosis:
Treatment,"      www.mayoclinic.org/cirrhosis/treatment.html
(visited Dec. 19, 2013, as were the other websites cited in this
opinion). At the oral argument Garcia's lawyer told us that
his client had been placed on the waiting list for a transplant
but had to be taken off it because he was too sick to have the
surgery. His platelet count was too low to enable him even
to have a liver biopsy—commonly performed both before
and after a liver transplant, Sanjiv Chopra, "Patient Infor-
mation: Liver Biopsy (Beyond the Basics)," *UpToDate*, June
12, 2013, www.uptodate.com/contents/liver-biopsy-beyond-
the-basics—without grave risk. The abdominal pain from
Garcia's cirrhosis and umbilical hernia is so severe that he
has been repeatedly hospitalized for it and even treated with
morphine and other opium derivatives, yet with only lim-
ited success. And he has other ailments besides cirrhosis,
hernia, and hepatitis, including lupus, anemia, colitis, anxie-

ty and other psychological problems, and chronic fatigue. One physician ominously described Garcia's condition as "chronic and terminal" and Garcia himself as "disabled and unable to perform any functions," because of pain and fatigue. Another advised him that even surgery to repair his umbilical hernia would involve a high risk of severe complications because of his low platelet count. Unsurprisingly Garcia is not only virtually house-bound but also unable even to perform household chores other than babysitting an 11-year-old.

A construction worker, Garcia quit work in 2008—the date of onset of his claimed disability—because his employer went out of business. He testified that although his health was already very bad, he could have continued working for that employer—but only because the employer valued Garcia's specialized experience sufficiently to allow him to take two or three days a week off from work because of his ailments. The vocational expert testified at the disability hearing that a worker who misses work more than one day a *month* (beyond sick days, vacation days, and other authorized leave) would "have difficulty sustaining competitive employment."

Garcia is, and has been since he applied for disability benefits, in awful shape. We are astonished that the administrative law judge, seconded by the district court, should have thought him capable of full-time employment (40 hours a week). The administrative law judge's opinion is riddled with errors. For example, he said that Garcia "essentially admits that he was not disabled" as of 2008 because he was working then. But that overlooks his uncontradicted testimony that he was employed only because he had experience

in construction that his employer valued highly. One can be employed full time without being capable of substantial gainful activity, paradox though that may seem. *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005); *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 915–16, 918 (7th Cir. 2003); *Wilder v. Apfel*, 153 F.3d 799, 801 (7th Cir. 1998); *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998). The reasons given in the cases we've just cited are a desperate employee or a lenient or altruistic employer. But another reason why a disabled employee might be treated by his employer as a full-time employee, as by being paid a full-time employee's wages for what was actually part-time work, might be that he possessed skills of such value to his employer that the employer was willing to overlook his inability to work full time—which appears to have been Garcia's situation.

The administrative law judge gave "no weight" to the opinion of Garcia's treating physician that his patient was "disabled and unable to perform any functions." The judge's ground was that determining disability is reserved to the Commissioner of Social Security (by which the administrative law judge meant reserved to him). That isn't true. What is true is that whether the applicant is sufficiently disabled to qualify for social security disability benefits is a question of law that can't be answered by a physician. But the answer to the question depends on the applicant's physical and mental ability to work full time, and that is something to which medical testimony is relevant and if presented can't be ignored. See *Bjornson v. Astrue*, 671 F.3d 640, 647–48 (7th Cir. 2012); *Ferguson v. Commissioner of Social Security*, 628 F.3d 269, 272–73 (6th Cir. 2010). Though not bound by the statement in the doctor's letter that "Mr. Garcia will be unable to

return to any form of employment," because a doctor may not be acquainted with the full range of jobs that a person with Garcia's ailments could fill, the administrative law judge, if he thought this a possibility, should have asked the doctor to specify more exactly what "functions" Garcia is incapable of performing. It appears from the doctor's report and testimony that the functions Garcia can't perform include virtually everything he'd need in order to be capable of full-time employment.

With two doctors—one of them an agency doctor unlikely therefore to exaggerate an applicant's disability, *Bjornson v. Astrue*, *supra*, 671 F.3d at 647, as the applicant is not his patient and favoritism with applicants would not go down well with the agency—opining that Garcia can't work full time and basing their opinions on extensive medical records and their own medical exams of the applicant, and no contrary evidence, we can't understand on what rational basis the administrative law judge could reject the application. But we can understand how he was led to that result by his errors, such as his misquoting the agency doctor—who had diagnosed Garcia as having abdominal pain—as having diagnosed him as having *no* abdominal pain (what he did not have, the doctor had opined, was nausea or vomiting). Nor was that doctor's the only diagnosis of abdominal pain.

Besides the medical evidence, there was testimony by Garcia's fiancée that Garcia sometimes wakes up at night "moaning and crying from the pain." The administrative law judge gave her testimony only "some weight, recognizing the potential for bias" attributable to their relationship. The implication is that if a plaintiff or a defendant (or a relative of either—or a fiancée) testifies in a case, the testimony must

automatically be discounted for bias. British and American courts used not to permit parties to a lawsuit (or their spouses) to testify at all, because of bias. The rule "preempted the jury's lie-detecting function by declaring certain witnesses to be likely liars as a matter of law." George Fisher, "The Jury's Rise as Lie Detector," 107 *Yale L.J.* 575, 624–25 (1997). When the rule was discarded, it wasn't replaced by a rule that the testimony of the parties or of other presumptively biased witness be given only half or a quarter or two-thirds the weight given the testimony of disinterested witnesses. The administrative law judge should have made clear whether he believed the fiancée's testimony or not, or which part he believed, or whether he had no idea how much of what she said was worthy of belief.

The report of the agency doctor notes that Garcia can walk with a steady gait, rise without apparent difficulty from a sitting to a standing position, stoop, squat, and even walk heel to toe. The administrative law judge thought these competences "inconsistent with a finding of disability." Wrong again. Garcia's ailments are unrelated to his musculoskeletal system and sense of balance. A person able to do all the things the administrative law judge listed would still be deemed totally disabled *per se* if he had a medical condition that appears in the Listing of Impairments. See "Adult Listings," Social Security Administration, *Disability Evaluation Under Social Security* 2013, www.ssa.gov/disability/professionals/bluebook/AdultListings.htm. And the list includes schizophrenia, deafness, epilepsy, metastasized oral cancer, Crohn's disease, heart disease, asthma, sickle-cell anemia, renal failure, early-onset Alzheimer's (normal onset would be at post-retirement age), and severe abdominal pain owing to (possibly terminal) untreatable liver disease.

The administrative law judge thought Garcia *must* have been exaggerating his symptoms because while claiming that the onset of his disability was in 2008 and rating his pain as 8 on a 10-point scale he had sought no medical treatment until 2010. But an administrative law judge is not allowed to infer from an applicant's failure to have sought medical care that he's a malingerer without asking him *why* he didn't seek care—and specifically whether he had health insurance. Social Security Ruling 96–7p, 1996 WL 374186, at *7–8; *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012); *Craft v. Astrue*, 539 F.3d 668, 678–79 (7th Cir. 2008); *Blakeman v. Astrue*, 509 F.3d 878, 888 (8th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Persons who don't have health insurance often delay in seeking medical care even for serious conditions. They can't afford hospital bills and don't want to have to declare bankruptcy. (Most personal bankruptcies are the result of inability to pay medical bills, often even if the patient is insured. David U. Himmelstein et al., "Medical Bankruptcy in the United States, 2007: Results of a National Study," 122 *Am. J. Med*. 741, 743 (2009).) Garcia testified at his disability hearing, without contradiction, that he had no health insurance.

The administrative law judge questioned Garcia's claim to be disabled on the ground that though he testified that he'd quit working in 2008, he admitted having worked sporadically thereafter until sometime in 2010. But none of this was paid work. The administrative law judge said that Garcia "was lifting and carrying heavy things while working construction as recently as June of 2010." His uncontradicted testimony was that he was "helping a friend build a house." Remember that his musculoskeletal structure is not impaired. So he could lift and carry things: but what things he

could lift, how large, how heavy, for how long—none of this was explored. And the administrative law judge didn't question Garcia's testimony—which was consistent with his being able to do only sporadic work after 2008—that he had been unable to work two or three days a week in his "regular" job, which had ended that year. Remember the vocational expert's testimony that missing even one day a month could get a full-time employee fired. Yet if missing one day a month jeopardizes full-time employment, missing 10 days a month (an average of 2.5 days a week for four weeks) must doom it.

We can't figure out what the administrative law judge was thinking when he found that Garcia could do construction work as late as 2010. His recitation of the boilerplate cart-before-the-horse credibility formula that we have been ridiculing since well before the opinion in the present case, *Bjornson v. Astrue*, *supra*, 671 F.3d at 645–46; see also *Parker v. Astrue*, 597 F.3d 920, 921–22 (7th Cir. 2010), only deepens our puzzlement.

At the disability hearing the administrative law judge asked the vocational expert about other limitations on ability to work full time that the evidence indicated that Garcia might have, including psychological problems that would preclude his exercising judgment more than occasionally. The vocational expert replied that even simple jobs require a more than occasional exercise of judgment. But having placed such emphasis on Garcia's ability to stand up, walk in a straight line, etc., the administrative law judge concluded that he was fully capable of doing sedentary work as long as it was simple and repetitive. No evidence supports this conclusion. No physician testified—no medical records re-

vealed—that Garcia has the residual functional capacity ascribed to him by the administrative law judge, who had acknowledged at the disability hearing that a person with the limits described in the medical assessment form that Garcia's physician had filled out would be unable to perform *any* paid work on a full-time basis, let alone work actually available in the economy.

Garcia is one of the most seriously disabled applicants for social security disability benefits whom we've encountered in many years of adjudicating appeals from benefits denials. We are surprised that the Justice Department would defend such a denial.

The judgment of the district court is reversed and the case returned to the Social Security Administration for further proceedings consistent with this opinion.

REVERSED AND REMANDED.