NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 6, 2018
Decided July 12, 2018

*Before*

DIANE P. WOOD, *Chief Judge*

MICHAEL S. KANNE, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 17-2491

| | |
|---|---|
| VICKY L. KNAPP,<br> *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Indiana, Fort Wayne Division. |
| *v.* | No. 1:16-CV-191-WCL |
| NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br> *Defendant-Appellee*. | William C. Lee,<br>*Judge*. |

**O R D E R**

Vicky Knapp applied for disability benefits and supplemental income asserting a host of mental and physical ailments. An administrative law judge found that she had the residual functional capacity to perform sedentary work, despite suffering from osteoarthritis, spinal problems, depression, anxiety, and attention deficit disorder. The district court affirmed, and on appeal Knapp contends that the RFC finding is not supported by substantial evidence because the ALJ improperly discounted opinions from her treating physician and the agency's examining psychologist, failed to assess the total effect of her impairments, and erred in discrediting her alleged symptoms. We agree with Knapp, and vacate the ALJ's decision. The treating physician's opinion fully

aligned with the examining psychologist's assessment, and yet the ALJ substantially discounted, if not disregarded, these opinions in finding Knapp was not disabled.

**I**

Until the date of her alleged impairments in June 2012, Vicky Knapp had worked over twenty years. She was diagnosed with breast cancer in 2007, underwent a double mastectomy, and received chemotherapy into 2009. She resumed work but left her latest job after experiencing a panic attack at work.

Dr. Shawn Kidder, a primary care physician, has treated Knapp since 2006 for physical and mental ailments, including pain in her back from degenerative disc disease, in her hips from osteoarthritis, and in her leg from a blood clot. His office referred Knapp to an orthopedic specialist in mid-2013, but her pain persisted despite steroid injections into her spine and pelvis. Dr. Kidder diagnosed Knapp with osteoarthritis, an overactive bladder, neuropathy, major depressive disorder, generalized anxiety disorder, and attention deficit disorder. He prescribed and adjusted medications for these conditions and twice opined in 2013 that the combined effect of Knapp's mental and physical impairments leave her unable to work.

The Social Security Administration enlisted the assistance of psychologist Dan Boen to examine Knapp in connection with her benefits applications. In August 2012, Dr. Boen found Knapp deficient significantly in concentration, moderately in immediate recall, and mildly in short-term memory. He concluded that Knapp would have trouble remembering job tasks and be unable to concentrate or stay on task at work. Dr. Boen diagnosed Knapp with major depressive disorder, generalized anxiety disorder, and a panic disorder. Using the Global Assessment of Functioning (GAF), he rated her at 45, with scores from 41 to 50 indicating serious difficulty functioning psychologically, socially, and occupationally, AMERICAN PSYCH. ASSOC., DIAGN. & STAT. MAN. OF MENTAL DISORDERS 34 (4th Ed., Rev. 2000) (DSM-IV). (Another metric has since replaced the GAF. AMERICAN PSYCH. ASSOC., DIAGN. & STAT. MAN. OF MENTAL DISORDERS 16 (5th Ed. 2013) (DSM-V).) Reexamining Knapp in October 2014, Dr. Boen slightly softened his views of her work abilities, concluding that she had difficulty concentrating and staying on task.

Knapp received mental health treatment at two facilities. In 2013 to 2014, she was treated at the Northeastern Center, where staff reiterated the diagnoses of depression and anxiety and rated her at GAF 45 (once) and 47 (three times). Two months into treatment Knapp reported increased anxiety and being dissatisfied with her

antidepressant medications. A clinical nurse specialist responded by changing Knapp's prescription and recommending therapy, which Knapp attended infrequently. In November 2014, Dr. Kidder referred Knapp for psychiatric treatment at the Bowen Center after she complained that her depression and anxiety medications were not working. A nurse practitioner at the Bowen Center reiterated diagnoses of depression and anxiety, rated Knapp at GAF 50, and suggested renewed therapy. During therapy Knapp's mood improved, but at one point her therapist noted that she regressed and spent most of one weekend unable to leave her bed. In late 2015, Dr. Kidder adjusted Knapp's prescriptions after she again complained about the efficacy of her anxiety medication.

The agency denied Knapp's applications for benefits. An ALJ found her not disabled, but a district judge remanded the case pursuant to the parties' agreement. The Appeals Council instructed a new ALJ to further evaluate Dr. Boen's opinion. At a hearing before the new ALJ in 2016, Knapp testified and explained the problems she was experiencing completing daily tasks. Her partner testified and reinforced these same realities, explaining that Knapp had difficulty remembering to take medications and to complete household work like finishing laundry.

The ALJ performed the standard five-step analysis and found Knapp not disabled. Between steps three and four, the ALJ had to determine Knapp's RFC "based on all the relevant medical and other evidence" in the record. 20 C.F.R. §§ 404.1545(a)(1), 416.920(a)(1). After separately assessing the records of Knapp's physical and mental impairments, the ALJ found that she had the RFC to perform sedentary work with specific restrictions. The ALJ gave "little weight" to Dr. Kidder's opinion that Knapp was unable to work because, in the ALJ's view, this conclusion was reserved exclusively to the Commissioner, inadequately explained, and inconsistent with Dr. Kidder's records and other evidence. The ALJ also gave "little weight" to the opinion of the agency's examining psychologist, Dr. Boen, determining that it was "not well supported," that Knapp's treating physicians generally found "normal mental functioning," and that her mental condition improved after Dr. Boen's exams. The ALJ found Knapp credible based on her work history but discounted her alleged symptoms, saying that they were credited "only in so far as they are consistent with the [RFC]." The ALJ relied instead on opinions from reviewing physicians who in 2014 and 2015 had opined that Knapp could do sedentary work.

## II

We review the ALJ's decision to determine if it was supported by substantial evidence. 42 U.S.C. § 405(g); *Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). An ALJ must consider the claimant's "medical situation as a whole," assessing the combined effect of the claimant's mental and physical impairments. *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004). Observations and opinions by a claimant's treating physician deserve substantial consideration in the requisite analysis. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

Knapp contends that the ALJ failed to adhere to these standards. She challenges the ALJ's decision to give "little weight" to the opinion of treating physician Dr. Kidder, who determined that she was unable to work because of the combined effect of back pain, neuropathy, an overactive bladder, depression, anxiety, and attention deficit disorder. Knapp further argues that the ALJ erroneously discounted this opinion as a legal conclusion and cherry picked isolated notes from Dr. Kidder's records without evaluating the totality of the information in the treatment records.

We agree with Knapp that the ALJ's reasons for discounting Dr. Kidder's opinion were invalid. First, the ALJ was of the mistaken view that Dr. Kidder's opinion of Knapp's ability to work was reserved to the Commissioner. The legal question whether a claimant qualifies for benefits is reserved, but when deciding the claimant's RFC, ALJs must consider a treating physician's view that the severity of a claimant's impairments makes her unable to work. See 20 C.F.R. § 404.1527(e)(1); *Garcia v. Colvin*, 741 F.3d 758, 760 (7th Cir. 2013); *Bjornson v. Astrue*, 671 F.3d 640, 647–48 (7th Cir. 2012); see also *Titles II & Xvi: Med. Source Opinions on Issues Reserved to Comm'r*, SSR 96-5P, at 5 (S.S.A. July 2, 1996) (explaining that a medical opinion that a claimant is unable to work "must not be disregarded"). While Dr. Kidder's opinion that Knapp was unable to work was not entitled to controlling weight, it had to be considered. See SSR 96-5P; *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

To the extent the ALJ did weigh Dr. Kidder's opinion, he misapplied the factors in 20 C.F.R. §§ 404.1527(c), 416.927(c), which call for considering the length, nature, and extent of the treatment relationship; the opinion's supporting explanation and consistency with other evidence; and any specialty of the physician. The ALJ emphasized Dr. Kidder's lack of specialty in mental health but glossed over Dr. Kidder's decade-long treating relationship with Knapp, during which psychological

specialists like Dr. Boen registered opinions entirely consistent with Dr. Kidder's own views of Knapp's mental impairments. A critical error was the ALJ's failure to acknowledge that Dr. Kidder was the only physician who treated Knapp for both her mental and physical ailments.

The ALJ criticized Dr. Kidder's explanation for his opinion because it consisted of only diagnoses. But Dr. Kidder provided greater explanation in his treatment notes, which clarify the extent of Knapp's limitations: recurring, serious pain in her back, hip, and leg; chronic ulcerative colitis that caused hospitalization; and major depression and anxiety. The ALJ seemed to be of the opinion that Dr. Kidder's treatment notes contradict his opinion because the notes show "intact" mental exams and no joint swelling. In forming this view, the ALJ impermissibly plucked notes describing Knapp's condition on select visits without viewing Dr. Kidder's treatment notes in their totality. See *Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018). Viewed in their entirety, the notes reveal Dr. Kidder's diagnoses of mental impairments and his recommendation of leg elevation for painful swelling.

Knapp next contends that the ALJ compounded the error of disregarding Dr. Kidder's opinion by similarly discounting the opinion of Dr. Boen, the agency's examining psychologist. Here, too, we agree with Knapp. "[D]iscounting the opinion of the agency's own examining physician that the claimant is disabled … [requires] a good explanation for this unusual step." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). The ALJ must explain his decision by again applying the factors set forth in 20 C.F.R. §§ 404.1527(c), 416.927(c). This step did not occur.

Dr. Boen's most recent view was that Knapp would have difficulty concentrating and staying on task at work, trouble remembering work instructions, and "serious difficulty" in functioning occupationally, as reflected by her low GAF score. The ALJ determined that Dr. Boen's assessment was not well supported by other medical evidence in the record. This conclusion ignores Dr. Kidder's and other treating sources' diagnoses of major depressive disorder, generalized anxiety disorder, and attention deficit disorder—all of which can result in trouble concentrating and remembering. See DSM-V, at 64, 161, 164, 223, 225. The ALJ found Dr. Boen's opinion unsupported to the extent it relied on Knapp's subjective complaints. By necessity, however, patients' self-reports often form the basis for psychological assessments. *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015). The ALJ also concluded that Knapp's mood and anxiety had improved since Dr. Boen's assessments. The ALJ rooted this observation in notations within records from specialists at Orthopedic Northeast who treated Knapp's back and

hip only. In doing so, however, the ALJ overlooked that Knapp's depression and anxiety persisted after Dr. Boen's exams, at times worsening and requiring medication changes.

The ALJ also impermissibly cherry picked from treating sources' records when discounting Dr. Boen's view based on the lack of a treating relationship, 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). According to the ALJ, treating physicians found Knapp to have "more normal mental functioning," and Dr. Kidder "usually" found her mental status to be "in the normal range." The record shows otherwise. Specifically, Dr. Kidder referred Knapp for additional mental health services and never changed his diagnoses of depression, anxiety, and attention deficit disorder.

Nor does the record show that the ALJ gave sound reasons for assigning "little weight" to Dr. Boen's GAF scores. Although another metric has replaced the GAF, the agency still considers these scores as relevant, medical-opinion evidence. See Soc. Sec. Admin., *Administrative Message* 13066 (July 22, 2013); *Gerstner*, 879 F.3d at 263 n.1. The ALJ discounted the GAF scores saying they captured just a "snapshot" and were subjective. But the ALJ was not permitted, without referring to medical evidence or ordering additional testing, to reject Dr. Boen's GAF ratings. See *Browning v. Colvin*, 766 F.3d 702, 705 (7th Cir. 2014); see also 20 C.F.R. §§ 404.1519a(b)(3), 416.919a(b)(3) (noting that additional examination may be required when a claimant's medical sources do not include specialized medical evidence necessary for informed disability determination). Furthermore, the ALJ's critique overlooks the consistency of Knapp's GAF scores indicating serious difficulty functioning at work. Starting with Knapp's first GAF rating by a clinical psychologist in 2009, she has been rated six times and never scored above 50.

We further agree with Knapp that the ALJ failed to assess the combined effect of her mental and physical impairments. See *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *Barrett*, 355 F.3d at 1068. Although finding Knapp capable of seated work, remembering straightforward procedures, and completing simple tasks, the ALJ assessed her physical and mental limitations separately, without evaluating, as our case law requires, how her impairments interact with each other. See *Barrett*, 355 F.3d at 1068. Even if any one of Knapp's impairments is not itself disabling, the record before the ALJ shows that their combined interaction would make it more difficult for her to perform simple tasks while seated for long periods: Knapp experienced pain and discomfort from extended sitting, and when not in pain, struggled to concentrate enough to complete even simple tasks like taking pills and doing laundry. And because

a vocational expert testified that an employee who must rest more than 10% of a workday would be unemployable, the ALJ should have assessed whether Knapp could work full-time despite the total breaks she would need to address her memory and concentration deficiencies, colitis and incontinence, and limitations sitting for sustained periods.

Finally, the record shows that the ALJ erroneously discredited Knapp's own account of her physical and mental limitations by drawing unwarranted inferences from her work history and failure to seek better mental health treatment. The ALJ concluded that Knapp's alleged symptoms were undermined by her work after chemotherapy, while simultaneously finding Knapp trustworthy *because of* her good work history. See *Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016). Regularly working while impaired does not disprove a person's limitations, however. *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014). The ALJ also disbelieved Knapp's testimony regarding the extent of her concentration problems, suggesting she would have complained to Dr. Kidder about her prescription for attention deficit disorder if her concentration were as bad as she alleged. While not raising this concern to Dr. Kidder, the record clearly shows that Knapp brought this issue to the attention of staff at the Northeastern Center. Furthermore, the ALJ was not permitted to discredit Knapp's alleged limits without affording her an opportunity to address this discrepancy at the hearing. See *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008). Lastly, the ALJ said Knapp's lack of therapy undermined her allegation of disabling depression, without considering whether her mental illness contributed to her irregular attendance at therapy. See *Kangail v. Barnhart*, 454 F.3d 627, 630–31 (7th Cir. 2006).

## III

Substantial evidence does not support the ALJ's determination that Knapp is not disabled. The ALJ effectively disregarded the complementary and reinforcing opinions of Knapp's treating physician and the agency's examining psychologist, while also failing to view the record in its entirety when assessing Knapp's limitations. Accordingly, we VACATE and REMAND for further proceedings consistent with this order.